DISCUSSION

As an initial matter, the Preamble of the Code states that the Code "should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in context of all relevant circumstances." Further, it states that when the text uses "shall" or "shall not," it is intended to impose binding obligations the violation of which can result in disciplinary action. In the Preamble's section of definitions, "law" denotes court rules as well as statutes, constitutional provisions, and decisional law. Moreover, a person's knowledge may be inferred from circumstances. Thus, "in the context of all relevant circumstances" in SC06-1532, Justices Lewis and Quince had "binding obligations" imposed upon them by the Code to ensure the integrity of the judicial proceedings over which they presided, and their knowledge of departure from the guidelines of the Code "may be inferred from the circumstances." See App. A.

The controversy of Lugo's doubts as to existence of appropriate rights and State interests governing, or binding, Canon 3 D(2) was directly caused by failures of Justices Lewis and Quince to fairly and equally administer the Code on Lugo's pleadings "consistent with constitutional requirements, statutes, other court rules and decisional law and in context of all relevant circumstances." Further, it was directly caused by the failure of the JQC to enforce the Code "in context of all relevant circumstances" surrounding SC06-1532, in which the JQC failed to

account for the "accumulation of small and ostensibly innocuous incidents which, when considered together," emerged as patterns of hostile conduct unbecoming members of the judiciary. See *In Re Shea,* 759 So. 2d at 638. With no other available State body remaining to administer the Code, this controversy continues to exist and perpetuates an injustice through violations of principles of law. The questioned appropriate rights of Lugo and State interests bound by the Code at Canon 3 D(2) will be discussed herein.

A. State Interests.

The questioned state interests governing, or binding, Canon 3 D(2) are as follows: (1) Judicial integrity "is, in consequence, a state interest of the highest order." See *Caperton,* 129 S. Ct. at 2267 (quoting *Republican Party of Minn.*)*; In Re McMillan,* 797 S0. 2d 560, 571 (Fla. 2001) and the principle of "Equal Justice Under Law;" (2) fair and efficient administration of justice in proceedings of a state court. See *Martinez v. Court of Appeal of California,* 120 S. Ct. 684, 692 (2000) in re discussion on overriding state interest; (3) "providing suitably impartial, open-minded judges who will rule based on the evidence and governing law." See *Florida Family Policy Council,* 561 F. 3d at 1252; (4) integrity of proceedings is of unique and special concern on death-imposed appeals. See *Arbalaez v. Butterworth,* 738 So. 2d 326, 331 (Fla. 1999) in re "unique and special concerns in cases where the State seeks to take the life of a defendant;" and (5)

11

regulating conduct of attorneys. See *U.S. v. Lowery*, 166 F. 3d 1119, 1124 (11th Cir. 1999), in re expressed important state interest in regulation of attorneys.

B. Rights.

The questioned rights governing, or binding, Canon 3 D(2) are substantive and procedural as follows:

i. Substantive.

The substantive rights are: (1) constitutional requirements of right to equally defend life and liberty interest, to due process, to access to the courts, to no dismissal because an improper remedy was sought, and to exclusive jurisdiction to regulate conduct of attorneys. See Article I, Sections 2, 9, and 21; Article V, Sections 2(a) and 15, Florida Constitution; (2) statutes [7] to monitor performance of attorney assigned under the Registry Act, to raise errors at the first opportunity, and to provide sanctions commensurate with the adverse effects on the administration of justice. See § 27.711(12), § 924.051(8), and § 924.395(1)(d) and (2), Florida Statutes (2002); (3) court rule that the Chief Justice "is to rule on other procedural matters relating to any proceeding or process in the court." See Florida

---

[7]Courts "are not at liberty to add words to statutes that were not placed there by the Legislature." See *Hayes v. State*, 750 So. 2d 1, 4 (Fla. 1999). "The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the stautes and to give effect to the Legislature's intent." See *Fla. Dept. of State v. Martin*,, 916 So. 2d 763, 768 (Fla. 2005). As part of this inquiry, courts must address the legislation "as a whole, including the evil to be corrected, the language, title, and history of its enactment, and the state of law already in existence." See *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003) (quoting *State v. Henderson*, 764 So. 2d 848, 849 (Fla. 3d DCA 2000).

Rule Judicial Administration 2.205(a)(2)(B)(ii); (4) federal statute holding government attorneys accountable "to state laws and rules ... governing attorneys." See 28 U.S.C. § 530B(a) attached as App. H; and (5) decisional law of exception clause on precedents, prevent the misuse and abuse of the judicial system, required Nelson inquiry, duty to concede errors on appeals, and "continuous duty" to disclose. See *Haag v. State*, 591 So. 2d 614, 618 (Fla. 1992) in re exception clause on precedents when departure is necessary to vindicate other principles of law or to remedy continued injustice; *Day v. State,* 903 So. 2d 886, 888 (Fla. 2005) in re Court has authority and duty to prevent the misuse and abuse of the judicial system; *Maxwell,* 892 So. 2d at 1102; *Boca Burger,* 912 So. 2d at 571; *Fusari,* 95 S. Ct. at 540.

ii. Procedural.

The procedural right is Fla. R. App. P. 9.410.

The aforementioned rights and state interests are what Lugo is looking to declare as existing in the "other action if available" of amended commentary of Canon 3 D(2) adopted on June 15, 1995, and hereinafter known as "Requested Rights and State Interests."

As part of this Court's inquiry into this declaration, § 27.711(12), § 924.051(8), § 924.395(1)(d) and (2)(d), and 28 USC § 530B(a) may be harmonized as part of the method inherent in Canon 3 D(2) so as to give effect to Legislative

13

intent on the same subject of attorney misconduct adversely affecting the administration of justice and causing defect in the integrity of proceedings in Lugo's direct appeal, postconviction process, and in Case No. SC06-1532. See *Fla. Dept. of State, Bautista,* supra, in re doctrine of *in pari materia.* Thus, the harmonization of these statutes will give effect to Legislative intent to raise and resolve errors at the first opportunity of Lugo's claims of the severe failure in the judicial system caused by Registry counsel and counsels for the United States and State.

## BONA FIDE NEEDS

Lugo will present five "bona fide" needs for Requested Rights and State Interests so as to ultimately restore order and integrity of the Fourteenth Amendment to the U.S. Const. and Fla. Const.'s due process protections, which was to protect "... against any and all abuses, and arbitrary, discriminatory or essentially unfair exercise of delegated governmental power, authority or duty, of any nature or character whatever." See *Luroson V. Woodruff,* 134 Fla. 437, 181 So. 81 (1938); see also *Barancik v. Gates,* 134 So. 2d 497 (Fla. 1961), in re Fla. Const.'s due process protections extend to "all powers of every governmental agency and to every type of legal proceeding." These five needs will be discussed herein.

A. Vagueness.

As an initial matter, "if a statute or rule is plain and obvious, it must be enforced according to its meaning." See *Gervais v. City of Melbourne,* 890 So. 2d 412, 414 (Fla. 5th DCA 2004). Decisional law herein involving interpretation of statutes may be logically extended to the Code that were promulgated in the exercise of quasi-legislation authority.

Apparently, the actions and inactions by Justices Lewis and Quince as Chief Justice, as well as JQC's dismissal of Lugo's complaint, reflected or established that the methods inherent in Canon 3 D(2) are so "impermissibly vague" that it "encourages arbitrary and discriminatory enforcement" by State's judges on important state interest in the regulation of attorneys. This type of enforcement clearly violated Lugo's Fourteenth Amendment guarantee and the Florida Constitution's guarantee of due process protections, meriting discipline or reprimand for Justices Lewis and Quince and the lawyers whose actions Lugo complained about. See *Hill v. Colorado,* 120 S. Ct. 2480, 2489 (2000), citing *Chicago v. Morales,* 527 U.S. 41, 56-57 (1999); *Dept. of Law Enforcement v. Real Property,* 588 So. 2d 957, 960 (Fla. 1991) in re with Canon 3 D(2) expressing no notice on prohibited conduct in providing information and access to methods, due process contemplates fair notice and a real opportunity to respond or be heard. This due process violation procured defects in the integrity of proceedings in

SC06-1532, where the failure to discipline the named Justices deprived Lugo of the ability to proceed in the Florida Supreme Court with no fear of continuing partiality.

This impermissible vagueness caused Lugo's doubts and is clearly and convincingly demonstrated by the methods inherent in Canon 3 D(2) afforded to death row inmates in *Ventura v. State* and *Coleman v. State*.

In *Ventura*, a pro se All Writs petition was adjudicated on the merits by the Florida Supreme Court. See *Ventura v. State,* 2 So. 3d 194, 201 (Fla. 2009). Yet, when Lugo filed a pro se All Writs petition as an original action – with payment of filing fees – it was not only misfiled as a pleading in the appeal of SC06-1532 <u>but</u> was denied by the Clerk and stricken as unauthorized. The court subsequently affirmed the "call" made by the Clerk. See <u>App. A</u>, pages 5-6, in re discussion on orders of May 27, 2008, and June 23, 2008. It makes no difference that Ventura invoked § 27.711(12) and Lugo invoked Canon 3 D(2). Enforcement of § 27.711(12) is one of the methods inherent in Canon 3 D(2).

In *Coleman*, the Florida Supreme Court considered allegations of attorney misconduct that it found "in note 2 page 3 of the petition" so as to sua sponte invoke § 27.711(12) and order the attorney to respond as well as order the circuit court to hold a hearing and consider whether any sanctions should be imposed by reasons of the allegations. See *Coleman v. State*, 930 So. 2d 580, 581 (Fla. 2006).

In comparison, in consideration of Lugo's claims against his Registry counsel,[8] the court, led by Justice Lewis as Chief Justice, failed to provide the same review and failed to remain faithful to law, not only in re § 27.711(12) but also § 924.395 and the decisional law required by Nelson as extended to appeals by virtue of *Johnson v. State,* 974 So. 2d 363 (Fla. 2008). See App. A, pages 4-5, in re orders of February 1, and 29, 2008.

While Ventura, Coleman, and other death-imposed defendants received benefit of real opportunity to be heard so that the failures of their attorneys would not be forced upon them through the doctrine of agency, Lugo was excluded from this class of cases where the courts have an inherent duty and a statutory duty to ensure that capital defendants receive adequate representation and effective appellate review.   This discrimination affected the outcome of SC06-1532 on October 8, 2008.

The Court should note that neither the Supreme Court nor the Clerk struck Lugo's pro se Motion for Rehearing of the order of October 8, 2008.  Instead, this motion was denied by Chief Justice Quince and concurred by remaining Justices on January 22, 2009, despite Lugo's raising the issue of continuing adverse effects of illegal deprivation of method inherent in Canon 3 D(2) that were overlooked by

---

[8]In SC06-1532, Lugo filed a well supported Motion to Remove Registry Counsel based on beyond negligent conduct. Had Lugo been treated the same as Coleman and other death-imposed defendants similarly situated, the outcome of SC06-1532 would have been different and the court would have noted the same conflicts of interest caused by Registry counsel as the Florida Bar later discovered in Florida Bar Case No. 2009-70, 374(11B).

the court. Chief Justice Quince had the clear opportunity to remedy defects in the integrity of proceedings that infected and ultimately legally voided the order of October 8, 2008. Yet, the Chief Justice failed to restore judicial integrity on January 22, 2009, and concluded her disservice to Canon 3 D(2) with the issuance of the mandate on February 10, 2009, frustrating Lugo's rights to avail himself of the inherent power of the courts to correct an injustice.

Based on the foregoing, the apparent "impermissible vagueness" in the methods inherent in Canon 3 D(2) encouraged "arbitrary and discriminatory enforcement" of the Code so as to violate Lugo's Fourteenth Amendment due process protections, also guaranteed by the Florida Constitution at Article I, Section 9, and which failure to deploy rendered Canon 3 D(2) unconstitutional as applied to Lugo. Further, this "arbitrary and discriminatory enforcement" is responsible for the Florida Supreme Court's becoming "accomplices" to the State of Florida's "unclean hands" in the severe failure in the judicial system and to resulting defect in the integrity of the proceedings in SC06-1532. See *Payner*, 100 S. Ct. at 2451.

Therefore, if requested declaration is not granted, Lugo cannot pursue supplemental relief pursuant to § 86.061, in which "the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse." See *Joseph v. State*, 447 So. 2d 243, 247 (Fla. 3rd DCA 1983), quoting *United States v.*

*Loschiavo,* 531 F. 2d 659, 667 (2nd Cir. 1976). Lugo's exclusion from class of death-imposed pro se defendants who received benefits of real opportunity to be heard is "glaringly apparent to the most myopic and obtuse." Thus, Lugo is entitled to Requested Rights and State Interests so he may pursue supplemental relief of reapproaching the Florida Supreme Court to address the prejudice caused by this "impermissibly vagueness" and vindicate principles of law as well as of requesting appropriate action by this Court pursuant to Canon 3 D(1) of the Code and § 924.395(2)(d), F.S.

## B. Caustic Opinion of Justice Wells.[9]

In the denial orders of February 1, 2008, June 23, 2008, and January 22, 2009, in SC06-1532, Justice Wells filed no dissent on the actions of respective Chief Justice that went against his position on issue of severe failure in the judicial system as set forth within his concurring opinion in *Landry.* See *Landry,* 666 So. 2d at 129-130. Nor filed a concurring opinion as to why his position was different in SC06-1532 than it was in *Landry* on the same subject of severe failure in the judicial system may be addressed by the methods inherent in Canon 3 D(2). Apparently, no matter what Lugo did to get the court to address such failure, he was not going to be afforded the benefits or guidance of Justice Wells' concurring opinion in *Landry* by Justice Wells himself. Thus, it gave the appearance of

---

[9]Justice Wells is no longer serving on the bench of the Florida Supreme Court and for that reason was not named as one of the parties in 09298.

supporting respective Chief Justices' arbitrary and discriminatory enforcement of the Code and resulting unconstitutionality of Canon 3 D(2) as applied to Lugo.

Hence, there is further support for the claim of vagueness in the methods inherent in Canon 3 D(2), and without the Requested Rights and State Interests being fairly applied, "the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse." Thus, Lugo is entitled to declaration.

C. Defect of Void Judgment.

With Requested Rights and State Interests, the arbitrary and discriminatory enforcement of Canon 3 D(2) by Justices Lewis and Quince as Chief Justice may be shown by evidence "of an accumulation of small and ostensibly innocuous incidents which, when considered together, emerge as a pattern of hostile conduct unbecoming a member of the judiciary." See *In Re Shea,* 759 So. 2d at 368.

This pattern is responsible for the inexcusable departure from the guidelines in the Code and the resulting violation of Canons 1, 2(A), 3B(2), 3C(2), and 3D(2), respectively. Further, it is responsible for rendering void the judgments of February 1, 2008 – January 22, 2009, caused by the illegal deprivations of Lugo's real and equal opportunity to be heard, and appearance of partiality. See *Phenion Development Group, Inc., v. Love,* 940 So. 2d 1179 (Fla. 5th DCA 2006) in re judgments are void as a result of illegal deprivation of opportunity to be heard; *Caperton,* 129 S. Ct. at 2266-67, in re appearance of partiality and recusal standards

set by "professional standards of the bench;" <u>App. A.</u>, pages 4-9 in re orders of February 1,2008 – January 22, 2009. The continuing present adverse effects of this pattern has been knowingly continued by the State of Florida into Federal Case No. 00-2912-Civ-PAS on October 13, 2009, and exists the cognizable danger of the State's continuing these effects in any other proceeding of a state and federal court.

Therefore, with Requested Rights and State Interests, Lugo may pursue supplemental relief of reapproaching the Florida Supreme Court to reopen SC06-1532, requesting recusal of Justices Lewis and Quince, and seeking relief in 00-2912 if needed. Otherwise, the "frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse."

<u>D. State of Florida.</u>

With Requested Rights and State Interests, it may reasonably support supplemental relief seeking remedy on the continuing present adverse effects of conflicts of State interests caused by the Office of the Governor and the Attorney General's Office, making themselves direct causes and parties with the Department of Corrections, respectively, to the defect in the judicial integrity and procedural integrity of SC06-1532 as well as to the rendering of Canon 3 D(2) unconstitutional as applied to Lugo.

As expressed earlier and adopted here, the Office of the Governor and the Attorney General's Office were in possession of information that multiple State

officials with aid of government attorneys were involved in and supporting, respectively, conduct that caused severe failure in the judicial system and threatened the integrity of the proceedings in SC06-1532. For more support on the claims of information or knowledge possessed by State agents in these proceedings, see Petition for Writ of Mandamus at <u>App. A</u> in re internal <u>App. J</u>, documents attached at <u>App. I-Q</u> (same documents used in said mandamus petition), and additional relevant documents are attached at <u>App. R-W</u>. Thus, Governor Crist and AG McCollum were aware of this information and, therefore, were in position with the DOC to prevent avoidable consequences of appearances of complicity in conflicts of multiple State interests, defects in the judicial integrity, and defects in the integrity of all related proceedings that rendered Canon 3 D(2) as applied to Lugo unconstitutional

As to the "known" and "should have known" aspects of government agents' knowledge in the illegal deprivation of Lugo's real opportunity to be heard, AG McCollum was not only ethically obiligated to have intervened in SC06-1532 pursuant to Florida Bar Rule 4-5.1(c)(2) <u>but</u> also report the departure from the guidelines in the Code and the arbitrary and discriminatory enforcement of the method, inherent in Canon 3 D(2) pursuant to Florida Bar Rule 4-8.3(b). These actions were necessary to prevent avoidable consequences of appearances of deliberate indifference by AG McCollum's allowing counsel for the State in SC06-

1532 to make the Florida Supreme Court "accomplices" to the continuing adverse effects of the severe failure in the judicial system and its resulting defect in the judicial integrity and integrity of the proceedings.

Upon the known fact that complaint was improperly assigned to Inspector General of DOC and no action taken by AG McCollum to remedy the apparent illegal deprivation of Lugo's real opportunity to be heard, Governor Crist was constitutionally obligated to not only ensure Chief Inspector General fairly and fully enforced Florida law at § 14.32 and § 924.395, but also ensure the faithful execution of duties by AG McCollum and counsel for the State, Sandra S. Jaggard, to preserve the integrity of State interests embracing Florida law of § 924.051(8), § 924.395(1)(d), and § 27.711(12), as well as Federal law of 28 USC §530B(a). This assurance was necessary to prevent avoidable consequences of deliberate indifference by Governor Crist on the arbitrary and discriminatory enforcement of duties and laws by the Office of the Governor as well as to allowing the State of Florida to make both the Florida Supreme Court and DOC "accomplices" to the ongoing severe failure in the judicial system and resulting defect in the judicial integrity and integrity in proceedings.  See App. T, page 3, in re complicity of DOC.

Yet, neither Governor Crist (or any authorized personnel of the Office of the Governor) nor AG McCollum took any appropriate remedial measure to evince

23

good-faith attempts to preserve the integrity of State interests directly related to and embracing Canon 3 D(2), Florida law of § 924.051(8), § 924.395, and § 27.711(12), and Federal law of 28 USC § 530B(a).  Any such good-faith attempts most likely would have remedied the injustice done to Lugo and vindicated well-established principles of law, justice, and fairness.   Thus, the Office of the Governor and Attorney General's Office with the DOC effectively obstructed the administration of justice in and so near proceedings of SC06-1532, respectively, thereto as to create serious conflicts of interest between enforcement of State interest in the finality of Lugo's convictions and sentence of death with the enforcement of State interests of Requested Rights and State Interests that were <u>not</u> enforced in SC06-1532.   In other words, the Office of the Governor cannot arbitrarily enforce law on signing Lugo's death warrant whilst it was party to lack of enforcement of law in and so near proceedings of SC06-1532. So, the Office of the Governor with the Attorney General's Office and DOC inextricably intertwined itself with defects in the proceedings of SC06-1532.  Moreover, the Office of the Governor is equally responsible with the Attorney General's Office for the State's "unclean hands" attempting to obtain unwarranted Federal aid in Federal Case No. 00-2912-Civ-PAS on October 13, 2009, by continuing adverse effects of defects of SC06-1532. See <u>App. F,</u> copy of State's response to Lugo's

Motion for Relief (See App. E), pages 7-11 and 13, in re paragraphs (16 and 20-21); see also App. G, copy of Lugo's reply, page 4, in re paragraph (5).

Based on the foregoing, public policy weighs heavily in favor of the declaration of Lugo's Requested Rights and State Interests so as to allow supplemental relief of compelling the Office of the Governor to expeditiously resolve its conflicts of interest prior to signing Lugo's death warrant if said resolution of conflicts does not undermine the validity of Lugo's convictions. Otherwise, "the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse."

E. Irreparable Harm.

There is no statutory right affording means to seek certiorari review on rulings made by the JQC on dismissal of judicial complaint based on insufficient evidence. Further, there are no other available, appropriate State body left to administer the Code "in context of all relevant circumstances" of SC-06-1532 that the JQC failed to do for Lugo and its ruling, in effect, "encourages arbitrary and discriminatory enforcement" of Canon 3 D(2) that is caused by the apparent vagueness in the methods inherent in Canon 3 D(2). See App. A-D. So, there exists the substantial likelihood of irreparable harm to Lugo's right to not only the administration and "due" benefits of the Code but also to removal of State defects

and impediments that prevents Lugo from timely filing a Federal habeas corpus petition.[10]

The declaration of Lugo's Requested Rights and State Interests would reasonably diminish this substantial likelihood of irreparable injury for reasons herein.

First, failure to "fill the ... gap in reasonable fashion."  When the circumstances presented itself of Lugo's deprivations to be heard may have been caused by vagueness in Canon 3 D(2), the Florida Supreme Court and JQC failed "to fill the ... gap in reasonable fashion."  See *National Cable & Telecommunications Ass. v. Brand X Internet Services,* 545 U.S 967, 980(2005) in re "in Chevron, this Court held that ambiguities in statutes within an agency's jurisdiction to administer are delegations to the agency to fill the statutory gap in reasonable fashion."  So, with the declaration, Lugo may present clear and convincing evidence that this failure to "fill the ... gap" by both the Florida Supreme Court and JQC "encourages arbitrary and discriminatory enforcement" of Canon 3 D(2) on death-imposed pro se defendants.  Further, evidence of failure to interpret and administer Canon 3 D(2) consistent with the Code's Preamble of

---

[10]The severe failure in the judicial system involves conduct of counsels for the United States and State so near and in, respectively, proceedings of direct appeal that procured defect in the integrity and undermined the start of AEDPA's one-year clock and of postconviction that procured defect in the integrity and undermined the remaining time of the AEDPA's one-year clock.

"with constitutional requirements, statutes, other court rules and decisional law and in context of all relevant circumstances."

Lastly, pursuant to Canon 3 D(1) and (2),[11] Lugo may pursue supplemental relief of a command to the JQC to reevaluate their position in 09298 consistent with the opinion of this Court or to a command to the Clerk of the Court to file a complaint with the JQC with attached opinion of this Court.

Therefore, Lugo is entitled to declaration of Requested Rights and State Interests. Otherwise, "the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse."

In conclusion, Lugo has raised five meritorious "bona fide" needs that, individually or collectively, support judicial declarations on Requested Rights and State Interests and related matters. See *Olive,* 811 So. 2d at 648.

## RELIEF

The general purpose for judicial declarations and injunctive relief requested herein is to remedy the defects in the integrity of the Code that have led to its arbitrary and discriminatory enforcement by members of both the Florida Supreme Court and investigative panel of the JQC. The fair and equal application of the method inherent in Canon 3 D(2) was supposed to prevent illegal deprivations of

---

[11]As the investigative panel of the JQC includes four judges and two members of the Florida Bar, this Court has authority to pursue appropriate action to ensure the JQC fills the gap caused by the vagueness.

Lugo's real opportunity to be heard on matters attempting to preserve substantive due process protections on preventing Registry counsel and counsel for the State "from engaging in conduct that … interferes with rights implicit in the concept of ordered liberty." See *United States v. Salerno*, 481 U.S. 739, 746 (1987). Thus, Lugo may obtain judicial declarations as to the validity, meaning, and application of Canon 3 D(2), existence of facts dependent on Requested Rights and State Interest, and injunctive relief. See *Bayne v. Florida State Board of Dispensing Opticians*, 212 So. 2d 762, 763 (Fla. 1968); *Olive*, 811 So. 2d at 648.

The allegations and other factual contentions of this complaint are sufficiently supported by records and documents and, if specifically identified so, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

DECLARATIONS:

Count I.

Pursuant to § 86.011(1) and § 86.021, F.S., declare that Lugo's Requested Rights and State Interest existed within the methods inherent in Canon 3 D(2) so as to have created a life and liberty interest to Lugo and all death-imposed pro se defendants who attempt to have the Florida Supreme Court address issue of severe failure in the judicial system and its related violations of substantive due process caused by attorney misconduct prior to, so near, and in proceedings of direct

appeals, postconviction process, and the appeals therefrom.   See "A. State Interests" and "B. Rights" on pages 11-12, supra, in re Lugo's Requested Rights and State Interests.   Further, it created a continuous duty on the Florida Supreme Court to trigger mandatory functions of the methods inherent in Canon 3 D(2) without needing death-imposed pro se defendant to invoke Canon 3 D(2) so as to move the Court.   The intent of the Code was to provide a method for the judiciary to police itself so as to ensure the just and even administration of justice in Florida in honor of the public trust placed in the judges.

Count II.

Pursuant to § 86.011(2) and declaration of Count I, the Court should declare existence of fact that Justices Lewis and Quince violated the Code at Canons 1, 2(A), 3B(2), 3C(2), and 3D(2) as follows:  (1) illegal deprivation of Lugo's real opportunity to be heard; (2) arbitrary and discriminatory enforcement of the method inherent in Canon 3 D(2); (3) rendering Canon 3 D(2) unconstitutional;[12] (4) inexcusable departure from the guidelines in the Code; and (5) "accumulation of small and ostensibly innocuous incidents which, when considered together, emerge as a pattern of hostile conduct unbecoming a member of the judiciary."

---

[12]When applied in such a manner as to curtail authority to administer the Code and enforce mandatory appropriate action. as well as to encourage seriously discriminatory enforcement of the method inherent in Canon 3 D(2), the discretion of the judges becomes unduly arbitrary and capricious and thus violates the 14th Amendment.

Count III.

Pursuant to § 86.011(2) and declaration of Count I, the Court should declare the existence of the fact that Canon 3 D(2) has been rendered unconstitutional as applied to Lugo "in context of all relevant circumstances" of SC06-1532 so as to encourage seriously discriminatory enforcement of the method inherent in Canon 3 D(2).

Count IV.

Pursuant to § 86.011(2) and declaration of Count I, the Court should declare existence of fact that the JQC's failure to fill the gap caused by the vagueness in the method inherent in Canon 3 D(2) led to subsequent failure by the JQC to properly interpret Canon 3 D(2) "in context of all relevant circumstances" of SC06-1532.  These failures led to faulty findings by the JQC in 09298 that effectively authorized or encouraged arbitrary and discriminatory enforcement of the Code so as to allow the  continued unconstitutionality of Canon 3 D(2) as applied to Lugo.

ii.  Injunctions.

Injunctive relief "grants judicial intervention that has been withheld" by the Florida Supreme  Court due to the arbitrary and discriminatory enforcement of the

methods inherent in Canon 3 D(2).  See *Nken v. Holder,* 129 S. Ct. 1749, 1757 (2009) (quoting *Ohio Citizens for Responsible Energy, Inc., v. NRC,* 479 U.S. 1312, 1313 (1986)(Scalia, J., in chambers).  Thus, this Court may direct the conduct of defendants, and may do so "with the backing of its full coercive powers" inherent in § 86.061 and § 924.395(2)(d), F.S., as well as in the methods inherent in Canon 3 D(1) and (2). Id.

In order to further establish entitlement to temporary and permanent injunction on respective parties, Lugo will rely on and adopt here the analytical approach of the Wolff Court.  See *Wolff v. McDonnell,* 94 S. Ct. 2963 (1974). Though it was on discussion of invalid prison regulations, Wolff provides guidance on issues of an agency violates due process when it fails to follow its own rules in adjudicatory processes as well as of obtaining ancillary relief of proper injunction enjoining the prospective enforcement of invalid judgments and of duties tainted with conflicts of interest.  Id. At 2974.

In regards to substantial likelihood of irreparable injury, Lugo will rely on and adopt here the logic of the Henao Court in regards to creating a presumption of irreparable injury.  See *Henao v. Prof'l Shoe Repair, Inc.,* 929 So. 2d 723, 726 (Fla. 5th DCA 2006).  Thus, the arbitrary and discriminatory enforcement of the methods inherent in Canon 3 D(2) procured a violation of these enforceable methods and, therefore, created a presumption of irreparable injury.

31

In regards to the unavailability of an adequate remedy at law, there are no statutory means of seeking certiorari review on the JQC's dismissal of Lugo's judicial complaint in 09298.  Further, there is no other appropriate State body available to administer the Code and fill the gap in the method inherent in Canon 3 D(2) caused by the apparent vagueness.  See *Fla. Hosp. v. Agency for Health Care Admin.,* 823 So. 2d 844, 848 (Fla. 1st DCA 2002) in re "However, a court need not defer to an agency's construction or application of a statute if special agency expertise is not required, or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute."  With both the Florida Supreme Court and JQC's interpretation of the method inherent in Canon 3 D(2) as applied to Lugo conflicting with the plain and ordinary meaning of Canon 3 D(2), Lugo has no other adequate remedy at law of another state body to resolve the conflicts by means of properly interpreting and administering the method inherent in Canon 3 D(2).

In regards to substantial likelihood of success on the merits, the declaration in Count I as well as Count II-IV will support supplemental relief in this Court, Florida Supreme Court, and JQC.  Further, it will support supplemental relief of conforming conduct of Governor Crist and AG McCollum to constitutional obligations, duties, and state law.  Thus, Lugo has the substantial likelihood of remedying continued injustice and vindicating other principles of law caused by

the arbitrary and discriminatory enforcement of the method inherent in Canon 3 D(2) and its direct cause to defects in the integrity of the proceedings in SC06-1532.

In regards to serving the public interests, public policy weighs heavily in favor of granting Lugo's request for injunctive relief. The State interests in the finality of Lugo's convictions and sentence of death as well as in principles of comity and equity <u>must</u> give way to overriding and compelling State interests or protecting judicial integrity in proceedings of death-imposed appeals, fair and efficient administration of justice in proceedings of death-imposed appeals, and regulations governing conduct of attorneys and State's judges. See *Burson v. Freeman,* 112 S. Ct. 1846, 1851 (1992) in re "necessary to serve a compelling state interest." Thus, injunctions will serve great public interest that no execution of an American takes place in Florida as a result of arbitrary and discriminatory enforcement of the Code and its direct causes to illegal deprivation of Lugo's real opportunity to be heard, forcing beyond negligent failures of Registry counsel upon Lugo, the courts' becoming accomplices to State's misconduct in the severe failure of the judicial system, and resulting defects in the integrity of proceedings in SC06-1532 that stymied discovery of a death-imposed American wrongly convicted.

Therefore, Lugo has reasonably established entitlement to injunctive relief. See *Yardley v. Albu,* 826 So. 2d 467, 470 (Fla. 5th DCA 2002). The requested injunctions are herein.

Count V.

Lugo is seeking injunctive relief that commands the conduct of the JQC – the four unknown judges and two lawyers in the investigation panel of 09298 – to conform with the Fourteenth Amendment to the U.S. Const. and Fla. Const.'s Due Process by the ceasing of the unconstitutionality of Canon 3 D(2) as applied to Lugo and interpreted as though it has been constructed by the proverbial designers of the camel. This command may consist of reopening Judicial Complaint Case No. 09298 and reevaluating its findings consistent with this Court's opinion so as to obligatorily fill the gap caused by the vagueness in the methods inherent in Canon 3 D(2) that has encouraged arbitrary and discriminatory enforcement and its resulting unconstitutionality of Canon 3 D(2) as applied to Lugo. Further, it may consist of commanding the JQC to pursue further action of a warranted trial as there is clear and convincing evidence of a pattern of inexcusable departure from the guidelines in the Code, and hostile conduct unbecoming a member of the judiciary.

In the alternative, this Court may take appropriate action of instructing the Clerk of the Court to report the judicial misconduct in SC06-1532 to the JQC and any other appropriate agency with a copy of this Court's opinion.

Count VI.

Lugo is seeking injunctive relief that enjoins the Attorney General Bill McCollum and his office from enforcing State interests in the finality of Lugo's convictions and sentence of death based on the defective orders of SC06-1532, in proceedings of Federal Case No. 00-2912-Civ-PAS, and any other legal forum.

Moreover, commanding AG McCollum to conform his conduct and conduct of his subordinate, Sandra S. Jaggard, to the Fourteenth Amendment of the U.S. Const. and Fla. Const.'s Due Process by complying with appropriate State law and duty to set records straight in both proceedings of SC06-1532 and 00-2912. The setting of the records straight in respective proceedings shall consist of cessation of the State's role in the "aiding and abetting" defect in the integrity of proceedings caused by: (1) arbitrary and discriminatory enforcement of the methods inherent in Canon 3 D(2) and its resulting adverse effects of forcing beyond negligent failures of Registry counsel upon Lugo; (2) continuing severe failure in the judicial system; (3) rendering Canon 3 D(2) unconstitutional; and (4) continuing adverse effects of SC06-1532's defects into 00-2912. These are the consequences caused by the

failures of both Governor Crist and AG McCollum of not employing any and all available remedial measures to preserve all relevant state interests and integrity of proceedings in SC06-1532.

Furthermore, enjoining AG McCollum and his office from pursuing wrongful execution of Lugo pending final resolution of setting the records straight in SC06-1532 and 00-2912 that will likely vindicate overriding and compelling State interests, remove defects in the integrity of the proceedings, and most importantly, reveal that Lugo has been wrongfully convicted through the severe failure in the judicial system that has continued thereafter criminal trial to defraud Lugo's property "interest" to $1,098,750.00 in Federal Case No. 99-1638-Civ-Middlebrooks, as well as affect the integrity in original proceedings of 00-2912 and all subsequent proceedings of state and federal courts.


Count VII.

Lugo adopts here the facts as set forth within above Count VI in context with constitutional duties of Governor Crist and his office over State officials who are under the Governor's jurisdiction so as to faithfully employ §14.32, F.S., as well as to enforce compliance with § 924.395(1)(d), F.S., relevant duties and compelling State interests, and restrain unauthorized acts of AAG Sandra Jaggard. See Article IV, Section 1(a) and (b), Florida Constitution.

Therefore, Lugo is seeking injunctive relief that enjoins Governor Crist, or current Governor, from signing Lugo's death warrant pending final resolution of AG McCollum's setting the records straight in SC06-1532 and 00-2912 so as to resolve conflicts of interest procured by the failures of the Office of the Governor so near proceedings of SC06-1532 thereto as to obstruct justice, undermine relevant compelling state interests and integrity of proceedings, and allow the State of Florida to "aid and abet" the unconstitutionality of Canon 3 D(2) and its resulting defect in the judicial integrity.

iii. Jury Trial.

Lugo requests a jury trial on any of the requested declarations pursuant to § 86.071, F.S., "When a declaration of right or the granting of further relief based thereon concerns the determination of issues of fact triable by a jury."

iv. Costs.

This Court may award costs as are equitable pursuant to § 86.081, F.S.

## CONCLUSION

Lugo respectfully moves this Court to grant judicial determinations on rights and State interests within the methods inherent in Canon 3 D(2) which have never before been determined so as to afford Lugo relief on judicial determinations on facts relying on the existence of said rights and State interests, supplemental relief on requested injunctions, and any other supplemental relief deemed appropriate by this Court or any other court.

## OATH/VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Complaint for Declaratory and Injunctive Relief and that the facts stated therein are true.

November 22, 2009
DATE

Daniel Lugo, DOC # M16321
Unit P-6223
Union Correctional Institution
7819 NW 228th St
Raiford, FL 32026

38

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Complaint for Declaratory and Injunctive Relief sans appendice has been furnished by U.S. Mail to: Charles J. Crist, Governor, The Capitol, PL-05, Tallahassee, FL 32399-0001; Bill McCollum, The Capitol, PL-01, Tallahassee, FL 32399-1050; and Michael L. Schneider, General Counsel for the JQC, 1110 Thomasville Road, Tallahassee, FL 32303-6224 on this _23rd_ day of November, 2009.

Daniel Lugo, DOC # M16321
Unit P-6223
Union Correctional Institution
7819 NW 228th St
Raiford, FL 32026

39

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

DANIEL LUGO, # M16321

     Plaintiff,

v.                                       Case No.: _____

THE JUDICIAL QUALIFICATIONS
COMMISSION, GOVERNOR OF FLORIDA,
CHARLES J. CRIST (IN OFFICIAL
CAPACITY), AND ATTORNEY GENERAL
BILL MCCOLLUM (IN OFFICIAL
CAPACITY),

     Defendants.

_____/

## APPENDICE TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF.

A.    Judicial Qualifications Commission Complaint.  Case No. 09298, Justices Lewis and Quince.

B.    Letter dated August 13, 2009, from the JQC to Daniel Lugo.

C.    Letter and attachment dated August 24, 2009, from Daniel Lugo to the JQC.

D.    Letter dated September 3, 2009, from the JQC to Daniel Lugo.

E.    Daniel Lugo's Motion for Relief filed in Federal Case No. 00-2912-Civ-PAS filed on or about September 28, 2009.

F.    State's Response to Mr. Lugo's Motion for Relief filed in Federal Case. No. 00-2912-Civ-PAS on October 13, 2009.

G.    Daniel Lugo's Reply to State's Response filed in Federal Case. No. 00-2912-Civ-PAS on or about October 21, 2009.

H.   Copy of Federal law 28 USC § 530B.

I.   Copy of State Law § 14.32, F.S.

J.   Letter dated January 19, 2007, from Daniel Lugo to Governor Crist.

K.   Letter dated February 27, 2007, from Office of the Governor to Daniel Lugo.

L.   Letter and attachment dated March 12, 2007, from Daniel Lugo to Chief Inspector General.

M.   Letter dated March 21, 2007, from Office of the Governor to Inspector General Paul Decker.

N.   Letter dated May 7, 2007, from Daniel Lugo to Chief Inspector General.

O.   Letter dated May 23, 2007, from Office of the Governor to Inspector General Paul Decker.

P.   Letter dated August 26, 2007, from Daniel Lugo to Chief Inspector General.

Q.   Letter dated September 7, 2007, from Office of the Governor to Inspector General Paul Decker.

R.   Letter dated March 12, 2007, from Daniel Lugo to Attorney General Bill McCollum.

S.   Letter with attachment dated July 10, 2008, from Daniel Lugo to Chief Inspector General.

T.   Letter dated November 12, 2008, from Daniel Lugo to Inspector General David Smith.

U.   Letter dated November 18, 2008, from Office of the Governor to Inspector General Paul Decker.

V.   Letter dated January 21, 2009, from Daniel Lugo to Chief Inspector General.

W.   Letter dated February 2, 2009, from  Daniel Lugo to Chief Inspector General.

2

*Appendix E*

*to*

*Federal Habeas Corpus Petition*

*June 19* , 2009                                                *App. E*

Ms Brook Kennerly, Executive Director
Judicial Qualifications Commission
Room 102, Historic Capitol Building
Tallahassee, FL  32399-6000

Re:   Judicial Qualifications Commission Complaint

Dear Ms Kennerly,

My name is Daniel Lugo, FDOC # M16321.  I currently reside on Death
Row at Union Correctional Institution, 7819 NW 228th St., Raiford, FL  32026.  I
am filing this Complaint with you to provide information of acts, or lack thereof,
by Justices R. Fred Lewis and Peggy Quince as Acting Chief Justice of the
Supreme Court of Florida in my appeals case no. SC06-1532 that effectively
rendered Canon 3 D (2) of the Florida Code of Judicial Conduct either into a
worthless piece of paper or unconstitutional as applied towards me.

The main thrust of my Complaint is as follows:  Prior to, on, and thereafter
February 1, 2008, Justices Lewis and Quince in the capacity as Chief Justice were
provided with information of substantial likelihood existed that my counsel as well
as counsels for the United States and State committed violations of the Rules
Regulating the Florida Bar and its resulting severe failure in the judicial system
continued into my appeals case no. SC06-1532.  Yet, neither Justice Lewis nor
Justice Quince triggered mandatory functions of Canon 3 D (2)[1] to directly address
this severe failure of the judicial system and attorney misconduct by way of
sanctions through judicial and professional discipline.  Thus, Justices Lewis and
Quince persistently failed to perform continuous judicial duties in accord with
Canon 3 D (2) when each was acting Chief Justice.

My Complaint finds support by the concurring opinion of Justice Wells in
*Landry v. State*, 666 So. 2d 121, 129-130 (Fla. 1995).  Justice Wells sets forth the
responsibility of trial judges and counsel for the State to know the rules of court
and to be aware of decisions of this Court which have been rendered several years
prior to trial.  The failure to follow the rules of procedure or to ignore decisions of

---

[1]      Canon 3 D (2) provides in relevant part:

(2).  A judge who receives information or has actual knowledge that substantial likelihood exists that a
lawyer has committed a violation of the Rules Regulating the Florida Bar shall take appropriate action.

the Court cause a "severe failure in the judicial system" which "undermines the public's confidence in respect to all of our courts." *Id.* at 130. Justice Wells suggested enforcement of the Code of Judicial Conduct by use of the disciplinary methods inherent in Canon 3 D of the Florida Code of Judicial Conduct. Justice Overton concurred with Justice Wells. Apparently, Justice Wells did not follow his own opinion in my appeals before him and fell on deaf ears on the rest of the Court.

It is my contention that the text of Canon 3 D (2) is plain and unambiguous so as to clearly impose a continuous duty of a judge to enforce it according to its meaning. See *Gervais v. City of Melbourne,* 890 So. 2d 412, 414 (Fla. 5DCA 2004) in re "If a statute or rule is plain and unambiguous, it must be enforced according to its meaning." See also *State v. Gale Distrib.*, 349 So. 2d 150, 153 (Fla. 1977). As it does not prescribe the manner or form of presenting this information or by whom, Canon 3 D (2) established substantive and procedural rights for Justice Lewis and later Justice Quince as Chief Justice to have acted upon my information despite striking as unauthorized, denying, and returning, respectively, my pro se pleadings presenting this information <u>and</u> in light of their awareness that I am time barred for federal habeas corpus review, no right to effective collateral counsel, and I was attempting to protect what may be considered my last right – effective appellate review.

As applied to me in Case No. SC06-1532, Canon 3 D (2) is governed substantively in relevant part by: (1) Florida Constitution's Article I, Section 2's, right to defend life and liberty interest, Section 9's due process clause, and Section 21's access to the courts as well as Article V, Section 15's exclusive jurisdiction on judicial and professional discipline on attorney misconduct; (2) it's equivalent to the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (3) Florida Statutes 27.711(12)'s right to quality representation by Collateral Counsel assigned under the Registry Act, and 924.395's right to impose sanctions against any person who has adversely affected the orderly administration of justice; (4) Fla. R. Jud. Admin. 2.205(a)(2)(B)(ii)'s provision for the Chief Justice "to rule on other procedural matters relating to any proceeding or process in the court"; and, (5) decisional law of *Haag v. State*, 591 So. 2d 614, 618 (Fla. 1992) in re exception clause on precedents when departure is necessary to vindicate other principles of law or to remedy continued injustice as well as of *Day v. State*, 903 So. 2d 886, 888 (Fla. 2005) in re duty to prevent the misuse and abuse of the judicial system.

2

As applied to me in Case  No. SC06-1532, Canon 3 D (2) is governed procedurally by Florida Rule of Appellate Procedure 9.410 which provides:

"After 10 days' notice, on its own motion, the court may impose sanctions for any violation of these rules, or for the filing of any proceeding, motion, brief, or other paper that is frivolous or in bad faith.  Such sanctions may include reprimand, contempt, striking of briefs or pleadings, dismissal of proceedings, costs, attorneys' fees, or other sanctions."

In summary, and it is my contention that the State of Florida created life, liberty, and property interest with the established standards and authority of Canon 3 D (2), to wit, pro se death-imposed defendants' right to present information of questionable quality of representation of counsel appointed under F.S. 27.710 , and of misconduct by counsels for the United States and State, so as to enable the judiciary to take appropriate action.  See *Dix v. Delo*, 885 F. Supp. 1265, 1277 (E.D. Mo. 1995) in re "Where State creates right…, 14th Amendment entitles him to procedures to ensure that right is not arbitrarily denied.," citing to *Wolf v. McDonnell*, 94 S. Ct. 2963, 2975 (1974).  The persistent failures of Justices Lewis and Quince not only "arbitrarily denied" me this right but also procured conflict of interest on and thereafter October 8, 2008.

Therefore, I will sufficiently demonstrate down below that the aforementioned persistent failures of Justices Lewis and Quince not only rendered Canon 3 D (2) into a worthless piece of paper and unconstitutional as applied to me but also procured judicial anarchy and conflict of interest as well as deprived me of aforementioned substantive and procedural rights governing this Canon[2] and its continuous duty.  Further, if so specifically identified, my allegations and other factual allegations of this Complaint will likely to have evidentiary support after a reasonable opportunity for further investigation.

---

[2]      Though the Canon 3 D has a history of confusion, no reasonable person may infer that there is any confusion or doubt to the existence of a judge's continuous duty to sua sponte trigger mandatory functions of the Canon regardless of the status of pro se pleadings presented by a death-imposed, federally time barred defendant who originally provided the necessary information that should have invoked this continuous duty.  See *In Re Code of Judicial Conduct*, 656 So. 2d 926 (Fla. 1995) in re confusion that required an amendment.  Akin to Canon 3 E, Canon 3 D and all other Canons "imposes a continuing duty, and a party need not even move under the Canon to trigger its operation."  See *Stein v. State*, 995 So. 2d 329, 344 (Fla. 2008) in re dissenting opinion of Justice Anstead.

### 1. Justice Lewis

During my exhaustive filings from August 21, 2007, to June 6, 2008, that effectively provided information of severe failure in the judicial system caused by attorney misconduct, Justice Lewis was the Acting Chief Justice. The aforementioned persistent failures of Justice Lewis will be shown by the totality of circumstances behind the orders of February 1, 2008, February 29, 2008, April 1, 2008, May 27, 2008, and June 23, 2008. See App. A-E. This totality will be chronologically broken down in respect to noted orders and discussed in turn.

A. Order of February 1, 2008.

On August 21, 2007, I filed various pleadings that included my letter dated August 2, 2007, state habeas corpus petition, and motion to remove counsel. See App. F-H, note: in App. H, Motion to remove counsel is located at App.G. On September 6, 2007, I filed a notice to court on criminal and fraudulent conduct by government and state officials. See App. H, at App. B. On October 22, 24, and 31, 2007, I filed relevant pleadings of supplement to motion to remove counsel and petition for writ of mandamus that was filed as an original action, erroneously filed by the clerk in my pending criminal appeals, and left unremedied by the Court. See App. I-J; copy of my letter dated October 12, 2007, attached as App. K. On October 4, 2007, I filed notice to court on ethical violations by government attorneys and its harm on the criminal appeals. See App. H at App. A.

Based on the foregoing, Chief Justice Lewis was provided with information that: (1) I am time barred for federal habeas review; (2) my counsel's beyond negligent conduct was undermining my right to effective appellate review; and, (3) collusion between counsels for the United States and State responsible for severe failure in the judicial system prior to, during, so near, and thereafter my direct appeal. Yet with Justice Wells and his known caustic opinion in *Landry*, Chief Justice Lewis failed continuous duty prior to and on February 1, 2008, to trigger functions of Canon 3 D (2) and directly address the severe failure in the judicial system by way of sanctions through judicial and professional discipline. See App. A. Instead, Chief Justice Lewis denied my request to remove counsel without even a required Nelson inquiry as mandated by the Court's "decisional law" of *Jones V. State*, 658 So. 2d 122, 125 (Fla. 1995). In an ironic twist, the Florida Bar found probable cause on March 9, 2009. See App. L. Thus, the failure of Chief Justice Lewis to perform continuous duty of following Canon 3 D (2)'s mandatory functions and precedent of *Jones 's* required Nelson inquiry deprived me of the

4

aforementioned rights governing Canon 3 D (2) and is equivalent to the judicial anarchy as expressed in *Hutto v. Davis,* 102 S. Ct. 703, 706 (1982):

> "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it be."
> *Id.* At 706.

This anarchy equally applies to the state judicial system, Florida Canon 3 B(2) of Judicial Conduct, and the Supreme Court of Florida following its own decisional law.

B.  Order of February 29, 2008.

Despite numerous citations of Canon 3 D (2) to have warranted access to the courts and applicability of *Haag's* exception clause on precedents, the Clerk of the Court was allowed "to make the call" on my motion for rehearing on above order of February 1, 2008. See App. B, in re order; App. H, at App. E in re my motion and numerous citations of Canon 3 D (2) on pages 2, 5, 6n.5, and 8-11; *Haag v. State,* 591 So. 2d 614, 618 (Fla. 1992) in re exceptions requiring departure from precedents; *Johnson v. State,* 974 So. 2d 363, 365 (Fla. 2008) in re Justice Anstead concurring in part and dissenting in part, in which Chief Justice Lewis concurs. Thus, the Clerk's order of February 29, 2008, in effect, continued the judicial anarchy from order of February 1, 2008, and its prejudice imputed upon Chief Justice Lewis pursuant to Canon 3 C (2) and service of copy.

C.  Order of April 1, 2008.

The Clerk's repeated making "the call" with no action taken or expressed concerns by Chief Justice Lewis on prior "call" of February 29, 2008, exacerbated the judicial anarchy of order of February 29, 2008, and its prejudice imputed upon Chief Justice Lewis pursuant to Canon 3 C (2) and service of copy. See App. C.

D. Order of May 27, 2008.

On May 5, 2008, I filed a clearly pled original action of petition for all writs jurisdiction. See App. H, at App. C. For some unexplained reason, the Clerk repeated error of filing this petition in my criminal appeals as previously done to my petition for writ of mandamus against the Office of the Chief Inspector

5

General. See App. A, in re striking of my petition for writ of mandamus; App. J in re mandamus petition.

This all writs presented detailed and supported information that the substantial likelihood existed of lengthy, widespread and severe failure in the judicial system caused by misconduct of counsels for the United States and State. Moreover, I made repeated references to Canon 3 D (2). See App. H, at App. C on pages 24, 25, 28, 29, and 31. With this petition, I went through great lengths and financial burden to provide this information to Chief Justice Lewis so as to shed light on and remedy, among other things, the judicial anarchy continued by the Clerk's "call" of February 29th and April 1st. See App. H, at App. C, paragraph 7 on page 4 and Relief (II) on page 5. Yet, the Clerk not only misfiled this original action in my pending criminal appeals but also made another "call" of striking it as unauthorized to add insult to injury. See App. L,        Thus, this continued the judicial anarchy from order of April 1, 2008, and its prejudice imputed upon Chief Justice Lewis pursuant to Canon 3 C (2) and service of copy.

E.  Order of June 23, 2008.

On June 6, 2008, I filed a motion for reconsideration on issue of Clerk's "call" in context with law of *Johnson* and pattern of misfilings of original action petitions. See App. M. With no expressed concerns on the Clerk's prior "calls" or on severe failure in the judicial system, Chief Justice Lewis struck my motion as unauthorized, returned my filing fee, and took no further action so as to repeat failures of February 1, 2008, its resulting judicial anarchy, and morph imputed knowledge of prior Clerk's "calls" continuing the judicial anarchy into actual knowledge. See App. H, at App. K in re order. Thus, Chief Justice Lewis repeated failure to trigger functions of Canon 3 D (2) and deprived me of aforementioned rights governing this Canon. *See App. E, in re same order of June 23, 2008.*

In conclusion, Justice Lewis is responsible for the judicial anarchy that took place under his tenure as Chief Justice in my appeals case no. SC06-1532 as a result of his repeated failure to perform continuous duty prior to, on, and thereafter February 1, 2008, and June 23, 2008, respectively, of triggering functions of Canon 3 D (2)[3] regardless of status of my pro se pleadings providing the necessary information. Further, Justice Lewis's repeated failure of this continuous duty failed to prevent his Court from becoming "accomplices" to the anarchy of

---

[3]     This persistent failure to trigger functions of Canon 3 D (2) was not consistent "with constitutional requirements, statutes, other court rules and decisional law and in context of all relevant circumstances." See third paragraph of the Preamble to the Code of Judicial Conduct.

superseding "U.S. -- State collusion" in subsequent Order of October 8, 2008. See *United States v. Payner*, 100 S. Ct. 2439, 2451-52 (1980); <u>App. H</u>, pages 8-9, in re quote of Mr. Justice Brandeis and at App. C for more details of "U.S. – State collusion."

## 2. JUSTICE QUINCE

In July of 2008, Justice Quince took over as Acting Chief Justice. Thus, the aforementioned failures of Justice Lewis will be shown to have been effectively continued by current Chief Justice Quince to, ultimately, place the Court's imprimatur on the severe failure in the judicial system on the issue of Extradition Treaty in Order of October 8, 2008, and in mandate of February 10, 2009. See copy of material excerpts of order of October 8, 2008, attached as <u>App N</u>; *Payner*, 100 S. Ct. at 2452, in re "it places its imprimatur upon such lawlessness."

A. Canon 3 D (2) Complaint.

With grave concerns of no appropriate actions taken by Justice Lewis as former Chief Justice and hope that Justice Quince as acting Chief Justice would do the right thing, I proceeded to file a Canon 3 D (2) Complaint on July 23, 2008. See <u>App. H</u>; copy of my letter dated July 10, 2008, attached as <u>App. O</u>. My Canon 3 D (2) Complaint was clearly addressed to Chief Justice Quince and sufficiently presented serious issues of attorney misconduct and its severe failure in the judicial system to have warranted the triggering of functions of Canon 3 D (2). But I was twice denied access to the Court by the Clerk with the suggestion of filing it with the Florida Bar. See copies of Clerk's letters dated August 1st and September 5th of 2008 attached as <u>App. P and Q</u>; see also copy of my letter dated August 12, 2008, attached as <u>App. R</u>. I could not even get the Clerk to stop making "the call" despite presenting *four* solid, lawful reasons to do so. See App. R, especially reason (4) that fell solely under the providence of the Chief Justice pursuant to Fla. R. Jud. Admin. 2.205(a)(2)(B)(ii). Regardless, these denials by the Clerk on my access to the Court and other aforementioned rights governing Canon 3 D (2) are imputed upon Chief Justice Quince pursuant to Canon 3 C (2), and accordingly, holds her responsible for the judicial anarchy continuing from order of June 23, 2008, into order of October 8, 2008, on and nexus issue of Extradition Treaty. See App. N.

Moreover, this imputation on Chief Justice Quince and the prejudice on the order of October 8, 2008, morphed into actual knowledge thereafter October 20, 2008. See copy of my letter dated October 20, 2008, attached as <u>App. S</u>. I never

received any response on this letter despite its copy and references made, respectively, in my motions for abeyance and rehearing filed alongside this letter. See copy of my letter dated October 23, 2008, attached as <u>App. T</u>.

Based on the foregoing, Chief Justice Quince is held responsible for failing continuous duty to trigger functions of Canon 3 D (2) prior to and thereafter October 8th and 20th of 2008 in light of the Clerk keeping provided copies of my letter and Canon 3 D (2) Complaint with appendix, both dated July 10, 2008, as well as of my letter dated October 20, 2008.

B.  Order of August 1, 2008.

Alongside my Canon 3 D (2) Complaint I filed an Emergency Petition that, in effect, should have ceased the judicial anarchy residing in orders of May 27, 2008, and June 23, 2008, as well as ceased further actions of the Clerk on making "calls" on my pleadings in a <u>capital</u>, death-imposed appeals. Yet, the Clerk proceeded to repeat his pattern of making "calls" in a death-imposed appeals by striking my Emergency Petition. See <u>App. U</u>. Moreover, it continued the judicial anarchy from both orders of May 27, 2008, and June 23, 2008. Furthermore, this Clerk's "call", in effect, overruled sub silentio the exception clause of *Haag* in contravention to decisional law of *Dorsey v. State*, 868 So. 2d 886, 888 (Fla. 2005). Thus, this Clerk's "call" and its prejudice is imputed upon Chief Justice Quince pursuant to Canon 3 C (2) and service of copy.

C.  Order of September 4, 2008.

On August 15, 2008, I sent a letter to the Clerk with a motion for clarification on issues of access to the courts and doctrine of stare decisis. See copies of my letter dated August 11, 2008, and motion for clarification attached as <u>App. V-W</u>. Yet, the Clerk proceeded to repeat his pattern of making "calls" in a death-imposed appeals by striking my motions. See <u>App. X</u>. Thus. This Clerk's "call" and its prejudice is imputed upon Chief Justice Quince pursuant to Canon 3 C (2) and service of copy.

D.  Order of November 4, 2008.

On October 23, 2008, I sent a motion for abeyance on rehearing proceeding for order of October 8, 2008. See copy of this motion attached as <u>App. Y</u>. I not only attached a copy of October 20, 2008, letter to Chief Justice Quince <u>but</u> also referenced Canon 3 D (2) and served a copy of this motion to Chief Justice Quince.

See App. Y, paragraph (2). Thus, I did my best to invoke the Court's supervisory powers and avoid "complicity." See App. Y, paragraph (5). Yet, the Clerk was allowed to make the "call" and Chief Justice Quince failed continuous duty to trigger functions of Canon 3 D (2). See copy of order of November 4, 2008, attached as App. Z.

F. Orders of January 22, 2009.

On January 22, 2009, the Supreme Court of Florida issued four orders. The relevant orders for this Complaint are the denials for rehearing, leave to file response, and withdrawal of counsel.

(i)     On October 23, 2008, I sent a motion for rehearing on order of October 8, 2008,. See App. 1. I attached a copy of Motion for Abeyance to ensure appropriate actions of the granting relief on issue of Extradition Treaty and of triggering functions of Canon 3 D (2). See App. 1, paragraph (1) on page 2. Yet, no such actions were taken to remedy the Court's "complicity" in the anarchy as Chief Justice Quince reinforced the Court's imprimatur of October 8, 2008, on the anarchy. See copy of order of January 22, 2009, attached as App. 2. Thus, Chief Justice Quince repeated failure of continuous duty to trigger functions of Canon 3 D (2). It is a fact that the severe failure of the judicial system prior to, in, and so near my direct appeal was responsible for fraud on the court and resulting equitable estoppel on any procedural bar on and nexus issue of Extradition Treaty should have been one of the judicial disciplines in accord with Canon 3 D (2). This discipline should have been done by the Court's own motion despite denying my motion for rehearing.

(ii)     On November 5, 2008, my lawyer attempted to withdraw. See copy . of counsel's motion to withdraw attached as App. 3. I attempted to file a response. See App. 4. Chief Justice Quince denied me leave to file a response and counsel's request to withdraw. See App. 5-6. Regardless of striking my response, the fact that my motion for leave referenced Canon 3 D (2) should have triggered functions of Canon 3 D (2) on information provided within my attached response that also referenced Canon 3 D (2) on pages 3-5. See App. 4, paragraph (4) on page 3. Thus, Chief Justice Quince repeated failure of continuous duty to trigger functions of Canon 3 D (2).

G . Order of March 25, 2009.

On February 6, 2009, I filed a motion for rehearing on orders of January 22, 2009. See App. 7. I intentionally designed this motion to clearly get Chief Justice Quince to trigger functions of Canon 3 D (2) so as to prevent manifest injustice. Yet, Chief Justice Quince denied my motion and took no further action. See App. 8. Thus, Chief Justice Quince repeated failure of continuous duty to trigger functions of Canon 3 D (2).

*H*.   Order of April 17, 2009.

On March *9*, 2009, my counsel filed a second request to withdraw. See App. 9. On March 23rd and April 13th of 2009, I filed my response and a supplemental. See App. 10 and 11. I could not have designed my response any better to have had Chief Justice Quince trigger functions of Canon 3 D (2) so as to grant counsel's withdraw, allow me to proceed in forma pauperis and without counsel in the United States Supreme Court in accord with Sup. Ct. Rule 12(2), and all other appropriate actions. Yet, Chief Justice Quince denied my counsel's second motion to withdraw and took no further action. See App. 12. Thus, Chief Justice Quince repeated failure of continuous duty to trigger functions of Canon 3 D (2).

In conclusion, Chief Justice Quince is responsible for the judicial anarchy continuing from the tenure of Justice Lewis as Acting Chief Justice in regards to persistent failures to perform continuous judicial duty of triggering functions of Canon 3 D (2) consistent "with constitutional requirements, statutes, other court rules and decisional law and in ʹcontext of all relevant circumstances." See third paragraph of the Preamble to Code of Judicial Conduct. Woefully, Chief Justice Quince had to have known of Justice Lewis's failures of same continuous duty when he was Acting Chief Justice and effectively acquiesced those failures by concurring with his decisions without dissenting with Justice Wells on the failures to directly address the severe failure in the judicial system by way of sanctions through judicial and professional discipline. This forced me to move under Canon 3 D (2) Complaint that was repeatedly blocked by the Clerk with no action taken by Chief Justice Quince to not only allow my "due" right of access to the courts so as to file my complaint but also to prevent her Court from becoming "accomplices" on October 8, 2008, to the anarchy of superseding "U.S. – State collusion."

### 3. Conclusion

As my peculiar circumstances are complex and complicated, I pray that I adequately and sufficiently presented and demonstrated the persistent failures by

Justices Lewis and Quince while acting Chief Justice to perform continuous judicial duties of triggering functions of Canon 3D(2) and to repeatedly allow the Clerk "to make the call", respectively. See _Johnson_, 974 So. 2d at 365 in re "to make the call" remark by Justice Anstead in his dissenting opinion. Thus, I have sufficiently satisfied probable cause to justify the initiation of formal charges.

These persistent failures were allowed to take place despite dictates of _Arbalaez_'s "the integrity of the process is of unique and special concern in cases where the State seeks to take the life of the defendant" and of _Baker_'s "we will continue to be vigilant that no fundamental injustices occurs." See _Arbalaez v Butterworth_, 738 So. 2d 326, 331 (Fla. 1999); _Baker v State_, 878 So. 2d 1236, 1246 (Fla. 2004).

Moreover, these persistent failures has not only forced me to seek judicial discretion of the U.S. Supreme Court _but_ also created a barrier between the U.S. Supreme Court and myself in regards to my ability to comply with Sup. Ct. R. 12(2). See _App 14_, in re Question (1) of petition for writ of certiorari; see also, copy of U.S. Supreme Court granting extension of time attached as _App 13_.

11

Therefore, I have to respectfully make an expressed, distinct demand for performance by this Commission to take appropriate action that will cure the harm to me and the greater harm to the judicial system caused by these persistent failures of Justices Lewis and Quince. Such appropriate action must be of such magnitude to preserve, restore and promote the integrity of Canon 3D(2). This action may include ordering Chief Justice Quince to reopen my appeal case no. SC06-1532, set aside order of October 8, 2008 on the basis of required recusal of Justices Quince and Lewis reduced the court below required quorum, and allow me to reargue appeal with new counsel.

This Commission should be shocked at what has taken place in my appeals. I did everything possible to cease the anarchy of "U.S.-State collusion" in my appeals but ignored by Justices Lewis and Quince so as to create a severe conflict of interest on and thereafter October 8, 2008. I reasonably expect this Commission to wield its authority to restore the integrity of Canon 3D(2). Thank you.

<u>OATH/VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Judicial Qualifications Commission Complaint and the facts stated therein are true and accurate.  See F.S. 92.525.

Daniel Lugo, Declarant

Most Cordially,

Daniel Lugo
M16321, 6223
Union C.I.
7819 NW 228th St.
Raiford, FL  32026

Encl:  Appendix

*Certified Return Card No.:*   7007 3020 0001 8606 1007

13

INDEX TO APPENDIX OF
JUDICIAL QUALIFICATIONS
COMMISSION COMPLAINT
AGAINST JUSTICES LEWIS
AND QUINCE

A.     Order of February 1, 2008.  Case No.: SC06-1532

B.     Order of February 29, 2008.  Case No.: SC06-1532

C.     Order of April 1, 2008.  Case No.: SC06-1532

D.     Order of May 27, 2008.  Case No.: SC06-1532

E.     Order of June 23, 2008.  Case No: SC06-1532

F.     Mr. Lugo's letter dated August 2, 2007, to Justice Lewis

G.     Mr. Lugo's State Habeas Corpus Petition

H.     Mr. Lugo's Canon 3 D (2) Complaint with Appendix (A-L).

I.     Mr. Lugo's Supplement to Motion to Remove Counsel.

J.     Mr. Lugo's Petition for Writ of Mandamus Against the Office of the Chief
       Inspector General.

K.     Mr. Lugo's letter dated October 12 2008 to Justice Lewis

L.     Florida Bar letter dated March 9, 2009.

M.     Mr. Lugo's Motion for Reconsideration on Order of May 27, 2008.

N.     Order of October 8, 2008.  Case No.: SC06-1532.  Material Excerpts on
       Issue of Extradition Treaty

O.     Mr. Lugo's letter dated July 10, 2008, to Justice Quince

P.     Clerk's letter dated August 1, 2008

Q.   Clerk's letter dated September 5, 2008.

R.   Mr. Lugo's letter dated August 12, 2008, to the Clerk

S.   Mr. Lugo's letter dated October 20, 2008, to Justice Quince

T.   Mr. Lugo's letter dated October 23, 2008, to the Clerk

U.   Order of August 1, 2008.  Case No.:  SC06-1532

V.   Mr. Lugo's letter dated August 11, 2008, to the Clerk.

W.   Mr. Lugo's Motion for Clarification on Order of August 1, 2008

X.   Order of September 4, 2008.  Case No.:  SC06-1532

Y.   Mr. Lugo's Motion for Abeyance on Rehearing on Order of October 8, 2008

Z.   Order of  November 4, 2008.  Case No.:  SC06-1532

1.   Mr. Lugo's Motion for Rehearing on Order of October 8, 2008

2.   Order of January 22, 2009, Denying Rehearing.  Case No.:  SC06-1532

3.   Counsel's Motion to Withdraw

4.   Mr. Lugo's Motion for Leave to File Response with attached Response

5.   Order of January 22, 2009, Denying Mr. Lugo's request to file belated response and striking response.  Case No.:  SC06-1532

6.   Order of January 22, 2009, Denying Counsel's request to withdraw.  Case No.:  SC06-1532

7.   Mr. Lugo's Motion for Rehearing on Orders of January 22, 2009.

8.   Order of March 25, 2009.  Case No.:  SC06-1532

9.   Counsel's Second Motion to Withdraw

10. Mr. Lugo's Response to Counsel's Second Motion to Withdraw

11. Mr. Lugo's Supplemental to Counsel's Second Motion to Withdraw with attachment

12. Order of April 17, 2009, Case No.: SC06-1532

13. U.S. Supreme Court's Order Granting Mr. Lugo an Extension of Time

14. Petition for Writ of Certiorari, United States Supreme Court Application No. 08A896.

Appendix F
to
Federal Habeas Corpus Petition

*App F*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  00-29/2-CIV-SEITZ

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

FOR MAILING

DANIEL LUGO,
    Petitioner,

v.

WALTER A. MCNEIL, FLORIDA
DEPARTMENT OF CORRECTIONS,
    Respondent.
_____/

## REPLY TO RESPONDENT'S RESPONSE
## TO MOTION FOR RELIEF

Petitioner, Daniel Lugo ("Lugo"), hereby replies to State's response to Lugo's Motion for Relief from Order and respectfully requests that State's response be held in abeyance pending resolution of Lugo's request to enjoin appearance of counsel for the State, Sandra S. Jaggard.  For the Court's convenience, Lugo proceeds to refute the State's response as follows:

1.    On October 13, 2009, Lugo received State's response as well as an Order of the U.S. Supreme Court  denying Lugo's petition for writ of certiorari dated October 5, 2009, in U.S. Supreme Court Case No. 08-11045.  The denial of Lugo's certiorari is material to this Court's determinations on whether to hold State's response in abeyance pending resolution on whether to enjoin appearance of Ms Jaggard because Lugo requested, but was not given, a U.S. Supreme Court Rule 8 hearing on allegations of Ms Jaggard's continuing attorney misconduct

1

from Florida Bar Case No. 2009-70,689(11E) and into U.S. Supreme Court Case No. 08-11045. See Lugo's Motion to Remove or Enjoin Appearance, in re <u>App. Z-7</u>. Pursuant to State's response, Ms Jaggard has continued her attorney misconduct into present case on grounds demonstrated herein.

2.    On Paragraph (10) of State's response, it appears that the State attempted to point out the essence of Lugo's motion.  Lugo's motion intended to impress upon this Court the essence as follows:  (1) the Federalized Anarchy procured federal defect that undermined the validity of his convictions, defrauded his property interest, and a federal matter; and (2) as the United States and State made no good-faith attempts to cease the existence of Federalized Anarchy and its continuing adverse effects prior to Lugo's filing of original petition, the United States and State made themselves a direct cause and party to the defect in the integrity of the prior proceeding to this case.

3.    On paragraphs (3, 8, 16-17, and 20-21) of State's response, the State has knowingly repeated hiding behind the "presumption of correctness" of these courts' respective judgments that the State itself procured by misconduct of continuing the adverse effects of the Federalized Anarchy.  See Lugo's Motion to Remove or Enjoin Appearance, in re <u>App.Q, R, S, X-Z, and 7</u>; *Boca Burger Inc. v. Forum,* 912 So. 2d 561, 571 (Fla. 2005) in re no party may hide behind the "presumption of correctness" of a court's order or judgment that the party itself

procured by misconduct.  Thus, the State has continued into this proceeding the adverse effects of Federalized Anarchy and its superceding State and federal defects, respectively, in the integrity of Lugo's direct appeal, Federal Case No. 03-20902, and Florida Supreme Court Case No. SC06-1532.  See Lugo's Motion to Remove or Enjoin Appearance, in re <u>App. Q, R, S, X, and Z</u>.  Yet, the State did not ethically concede this so its "unclean hands" may obtain aid from this Court on denying Lugo's motion.  See *Boca Burger, Inc.,* at 571 in re ethical obligations; *United States v. Payner,* 100 S. Ct. 2439, 2452 (1980) in re discussion on "unclean hands" are denied aid; *Fusari v. Steinberg,* 95 S. Ct. 553, 540 (1975) in re "continuous duty" to disclose developments which may impact outcome of proceedings.

4.    A hearing will ascertain the following relevant factor:  the State with aid of the United States is responsible for State and federal defects, respectively, in the integrity in the proceedings of Lugo's direct appeal, Federal Case No. 03-20902, and Florida Supreme Court Case No. SC06-1532.  These defects involve, inter alia, receiving unwarranted aid from these courts as their "unclean hands" continued to profit from the adverse effects of Federalized Anarchy and the State judicially estopped on all issues directly related and nexus to arrest and search warrants as well as to events leading to and in the Bahamas.  See *New Hampshire v. Maine,* 121 S. Ct. 1808, 1815 (2001) in re judicial estoppel; *Spradley v. Dugger,*

825 F. 2d 1566, 1568 (11th Cir. 1987) in re State and federal defects in the integrity

of any proceedings may be raised in a federal habeas court if it undermines the

validity of convictions.  So, Lugo may raise these defects now to not only refute

the State's reliance on the outcome of direct appeal, 03-20902, and SC06-1532, to

obtain unwarranted aid <u>but</u> also continuing attorney and judicial misconduct from

SC06-1532 and into present proceeding.  See <u>App. 2-3</u> of Lugo's motion.

5.    In regards to judicial misconduct, the State's wish to discuss fact

findings of SC06-1532 on paragraphs (16 and 20-21) produced the proverbial

"Pandora's Box" sans the "hope" of the State disclosing the "evils and ills" of

SC06-1532 released into this present proceeding.  The State has attempted here to

profit from the illegal deprivation of Lugo's real opportunity to be heard caused by

Justices Lewis and Quince as Chief Justice inexcusable departure from the

guidelines in the Florida Code of Judicial Conduct so as to discriminatorily enforce

the inherent methods[1] of Canon 3 D(2).  See <u>App. 3</u> of Lugo's motion.  In SC06-

1532, the State "aided and abetted" this judicial misconduct by taking no remedial

measures to correct the injustice on Lugo's real opportunity to be heard and to

vindicate principles of law, rights, and State interests inherent in Canon 3 D(2).

So, the State is aware, should have been aware, and duty to be aware that the

---

[1] The controversy on doubts as to the existence of rights and state interests caused by this departure and no action taken by the Judicial Qualifications Commission will be an issue of a state declaratory action that Lugo intends to file in the Circuit Court of Leon County sometime in November. Upon request by this Court or the normal course of discovery in any hearing in this case, Lugo will present clear and convincing evidence of this discriminatory enforcement of Canon 3D(2).

repeated illegal deprivation of Lugo's real opportunity to be heard resulted in respective judgments of SC06-1532 being void and the State held responsible for this disclosure in this Court if it intended to rely on SC06-1532 as it did on paragraphs (16 and 20-21) of its response. See *Phenion Development Group, Inc. v. Love,* 940 So. 2d 1179 (Fla. 5th DCA 2006) in re short of illegal deprivation of opportunity to be heard, wrongdoing in proceedings will not render the judgment void. But, State failed to make this disclosure and should be one of the issues to be determined in a hearing on whether this Court will rely on fact findings of SC06-1532 to deny Lugo's motion.

6.   Regardless, the issue of whether this Court may rely  on these fact findings of SC06-1532 as well as on outcome of direct appeal and 03-20902 is moot as the State is asking this Court to place the proverbial "cart before the horse" with "horse" being the defect and manifest injustice in the integrity of the prior proceeding in this case.  What is most relevant here is the outcomes of direct appeal, 03-20902, and SC06-1532, are derivatives of the outcome on November 22, 2000, in this case and its manifest injustice  that may now cause irreparable harm to Lugo, viz., wrongful execution, is the basis for relief under F.R.Civ.P. 60(b)(6).

7.   On paragraph (12) of its response, State is contending that Lugo's motion "does not attack a defect in the integrity of the prior proceeding in this

case" because of no involvement by the State in the prior proceeding. Apparently, the State excluded relevant circumstances raised in Lugo's motion that inherently attacked the defect in the integrity of the prior proceeding in this case. First, the existing continuing adverse effects of Federalized Anarchy bootstrapped to Lugo's original petition undermined the integrity of the prior proceeding. Lastly, the United States and State are to be held responsible for the defect in the prior proceeding as a result of failure to cease the continuing adverse effects of Federalized Anarchy prior to Lugo filing original petition in this case. There was no excuse for this failure as the United States and State were aware of Lugo's pending direct appeal that paralleled prior proceeding of this case. So, "the alleged governmental conspiracy" is implicitly responsible for affecting the outcome of prior proceeding.

8.    On paragraph (13) of its response, the State apparently believes that Lugo is attempting to subsume one of the more specific grounds for relief from judgment contained in Rule 60(b)(1-5). This is not true for the following reasons:

i.    Equitable Estoppel.

Lugo was lulled into a belief of no existence of Federalized Anarchy and its continuing adverse effects prior to and thereafter Lugo's filing of original petition. Further, this belief continued until July 5, 2002, well beyond the one year time limitation of Rule 60(b)(1-3). So, if the exceptional circumstances were more

proper and efficient under any other section of Rule 60(b), Lugo would have done so with the shield of equitable estoppel to overcome the one year time bar. See pages 29-35 of Lugo's motion in re "G. Relief" – "I. Delay." Yet, Lugo could not clearly and completely square the totality of the exceptional circumstances under any other section than Rule 60(b)(6) in accord with *Liljeberg v. Health Services Acquisition Corp.,* 108 S. Ct. 2194, 2204 n.11 (1988).

  ii.  Fraud.

  On paragraphs (18-19), the State wishes for this Court to believe that Lugo has claimed fraud in this Court. First, there was no adverse party in the prior proceeding and would have been easier for Lugo had the State participated in the prior proceeding. Lastly, Lugo made no such claim. The claim made by Lugo on fraud was for this Court "to proceed with further investigation or discovery on whether federal courts of 99-0418, 99-2419, and 99-1638 were victims of fraud upon the court … and, if so, the extent of its impact on the original proceedings of this Court." See page 33 of Lugo's motion.

  iii.  Interest of Justice.

  If this Court deems that the totality of exceptional circumstances does not justify relief under Rule 60(b)(6) but rather Rule 60(b)(1) or (2), then this Court may sua sponte invoke doctrine of equitable estoppel to do so in the interest of justice.

But, with no trial as a result of petition procedurally dismissed, Rule 60(b)(2) appears to be inappropriate. There was no mistake, inadvertence, or excusable neglect on the part of Lugo. Further, as Lugo was lulled, he cannot say that he was surprised. So, it appears that Rule 60(b)(1) is not applicable.

Regardless, whether the Court chooses Rule 60(b)(1), (2), or (6), there are no legal and procedure bars preventing this Court from invoking its inherent and supervisory powers to deny aid to State's "unclean hands" and proceed to adjudicate Lugo's motion for relief.

9.     In conclusion, Lugo has presented and demonstrated grounds that counsel for the State, Ms Jaggard, has continued her attorney misconduct into present proceeding to warrant holding State's response in abeyance pending resolution of Lugo's request to enjoin appearance of Ms Jaggard.[2]   Otherwise, sufficient grounds have been presented and demonstrated to deny aid to State's "unclean hands" and proceed to adjudicate Lugo's motion for relief as well as grant any other relief deemed appropriate by this Court.

Respectfully submitted,

Daniel Lugo

---

[2]At the date of filing this Reply, Lugo has not received a response from Ms Jaggard on his request to enjoin her appearance.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the following motion has been furnished by U.S. Mail to:   Sandra S. Jaggard, Assistant Attorney General, 444 Brickell Avenue, Suite 950, Miami, FL  33131-2407 and Bill McCollum, Attorney General, The Capitol, PL-01, Tallahassee, FL   32399-0001,on this _2/st_ day of October, 2009.

Daniel Lugo, M16321
U.C.I. P-6223
7819 N.W. 228th St.
Raiford, FL  32026

Appendix G
to
Federal Habeas Corpus Petition

*App. 6*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO 00-2912-CIV-SEITZ

DANIEL LUGO,

     Petitioner,

v.

WALTER A. McNEIL, FLORIDA
DEPARTMENT OF CORRECTIONS,

     Respondent.

_____/

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

12/4/09  *Daniel Lugo*
        FOR MAILING

## SUPPLEMENTAL REPLY TO RESPONDENT'S
## RESPONSE TO MOTION FOR RELIEF

     Petitioner, Daniel Lugo ("Lugo"), hereby files this pleading due to Lugo's recent filing of state complaint for Declaratory and Injunctive Relief and its relevancy to contentions made in original reply on pages 3-4 regarding paragraphs (4-5) and footnote (1). See App. A, pages 21-25 and 30-37 in re "C. Defect of Void Judgment", "D. State of Florida" and "ii. Injunctions", respectively.

     On October 21, 2009, Lugo mailed his original reply to this Court that provided information, inter alia, of Lugo's intentions of filing this state complaint. This state complaint was not attached to original reply, because it was not going to be finished before the deadline to file a reply. Lugo has also attached a copy of his letter to Governor Crist so as for this Court to be aware that the offices of the

Governor, Attorney General, and JQC are aware of the threat to the integrity of present proceedings caused by State's response.  See App. B-D.

This threat to the integrity of present proceedings is the result of the State's use of known fundamentally flawed fact-finding of SC06-1532 to continue "profiting" from continuing, present adverse effects of Federalized Anarchy and attempt to obtain unwarranted aid from this Court.  The factual allegations and other contentions of attached state complaint are material to establish a prima facie claim of not only how fact-finding of SC06-1532 are fundamentally flawed and undeserving of any deference but also this was known by the State and its conduct maybe construed as an attempt to obstruct the administration of justice that is punishable under 18 U.S. C. §401 (1) and (2).  Pursuant to a request from this Court or the normal course of discovery proceedings of an ordered hearing, Lugo is prepared to file a copy of the Appendice to the state complaint.  Regardless of the outcome of Lugo's motions and preferably prior to any ruling on Lugo's motions, judicial records should be established that reflects final dispositions on whether the State attempted to obstruct justice by evading disclosure of material facts central to case of present proceedings and, if so, specific findings that support the imposition of appropriate sanctions.

To assist the Court, Lugo will briefly discuss these material facts that were evaded by the State and its existence may be proven in any hearing offered by this Court.

First, the State is responsible for the known lack of good-faith allegations in the indictment of June 22, 1995 and resulting state court's lack of subject matter jurisdiction thereafter June 22, 1995 in state case no. F95- 17381C as a result of respective federal and state misconduct prior to, in , and thereafter the Bahamas. E.g., see State ex rel. Hardy v. Blount, 261 So.2d 172, 174 (Fla. 1972); Ham v. Dunmire, 891 So.2d 492, 497-98 (Fla. 2004) in re litigant's involvement in the conduct warranting dismissal of indictment is important factor to be considered by a court.  This subject matter jurisdiction is not dependent upon the ultimate disposition of the case.  Further, neither action nor inaction by Lugo or any other party with interest in the case could have conferred said jurisdictional power. E.g., see, Spitzer v. Branning, 139 Fla. 259, 190 So. 516 (1939); McCoy v. U.S., 266 F.3d 1245, 1248-49 (11th Cir. 2001).

Secondly, the perjury and fraud of Det. Robert Fernandez evaded or stymied disclosure or inevitable discovery of resulting state court's lack of subject matter jurisdiction as well as jurisdictional defect resulting from misconducts prior to and in the Bahamas.

Thirdly, the fraud and obstruction of justice in state case no. F95-17385C is inextricably intertwined with both the state court's lack of subject matter jurisdiction in state case no. F95-17381C and claims of standing and interest on $1.098.750.00 made in federal forfeiture case no. 99-1638-Civ-Middlebrooks prior to January 25, 2000. These monies should have been excluded as evidence in proceedings of both F95-17381C and 99-1638 so as to not affect the integrity of the proceedings of either case. Yet, the United States with the State ultimately procured a federal defect in the integrity of the proceedings in 99-1638 prior to and on January 25, 2000 and so near pending proceedings of Lugo's direct appeal. This federal defect led to the defraudation of Lugo's "property" interest to $1.098.750.00 and undermined the validity of Lugo's convictions and sentence of death.

Lastly, neither the United States nor State attempted to set the records straight in 99-1638 thereafter January 25, 2000 and cease the continuing adverse effects despite awareness of Lugo's pending direct appeal and possible consequences to the integrity of the proceedings in direct appeal and any other known and unknown courts. Thus, the United States and State are held responsible for defect in the integrity of the original proceedings of this case and all subsequent proceedings in federal and state courts. Further, Lugo is shielded by the doctrines of equitable and judicial estoppel.

Wherefore, Lugo respectfully moves this Honorable Court to grant all appropriate relief in the interest of justice and fairness.

Respectfully submitted,

Daniel Lugo
M16321, 6223
Union C.I.
7819 NW 228th Street
Raiford, Fl. 32026

## CERTIFICATE OF SERVICE[1]

I hereby certify that a true copy of the following supplemental has been furnished by U.S. Mail to Sandra S. Jaggard, Assistant Attorney General, 444 Brickell Avenue, Suite 950, Miami, FL. 33131-2407 on this *7th* day of December 2009.

Daniel Lugo

---

[1] Attorney General Bill McCollum was not served here as he was directly served with the State complaint, aware of present proceedings of this Court, and, therefore, aware how this state complaint further support Lugo's original reply.

5

Appendix H
to
Federal Habeas Corpus Petition

*App H*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-29/2-CIV-SEITZ

DANIEL LUGO,
  Petitioner,

v.

THE DEPARTMENT OF CORRECTIONS,
  Respondent.

_____/

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

9/28/09
FOR MAILING

## MOTION TO REMOVE OR ENJOIN APPEARANCE OF, RESPECTIVELY, PETITIONER'S COUNSEL, ROY D. WASSON AND COUNSEL FOR THE STATE, SANDRA S. JAGGARD

Petitioner, Daniel Lugo, respectfully files this present motion to demonstrate irreconcilable differences and conflict of interest, respectively, of Roy D. Wasson and Sandra S. Jaggard  As Ms Jaggard performed her misconduct with and through the acts of Mr. Wasson, it is paramount to present both misconduct of Mr. Wasson and Ms Jaggard together under one motion.  For grounds warranting relief or inquiry of an evidentiary hearing, Petitioner states as follows:

As an initial matter, Petitioner adopts here and incorporates by reference the facts and authorities as set forth within Motion for Relief from Order of November 20, 2000, and for Leave to Amended Original Petition.  This motion was filed alongside present motion and shall hereinafter be known as "First Motion."

1

Moreover, Mr. Wasson and Ms Jaggard are already in possession of documents listed in Appendix of First Motion and present motion, respectively. Thus, they were served copies of these motions sans appendix. This was done to avoid unnecessary copying and lessen the burden on the resources of Department of Corrections. Any relevant document not in possession by either Mr. Wasson or Ms Jaggard, or Attorney General Bill McCollum, will be immediately provided upon request.

The law governing this present motion is best expressed by *Singleton v. Foreman*, 435 F. 2d 962, 970 (5th Cir. 1970): [1]

> "The attorney is under a duty to represent his client with the 'utmost Degree of honesty, forthrightness, loyalty and fidelity' … He must resign if at any time in the course of litigation his interest in the suit becomes 'adverse or hostile to his client' … Indeed, custom requires that the attorney treat his clients with civility, common decency, and loyalty both as to legal problems and as to their personal relationship." Id

Moreover, it will be shown below that Mr. Wasson and Ms Jaggard served the same master – the Federalized Anarchy as discussed within First Motion. The serving of this master by both Mr. Wasson and Ms Jaggard clearly was adverse and hostile to Petitioner and created severe conflict of interest between Petitioner and with the State, respectively.

---

[1]    Eleventh Circuit adopted all Fifth Circuit rulings that were issued prior to and on September 30, 1981. See *Bonner v. City of Prichard*, 661 F. 2d 1206, 1207 (11th Cir. 1981).

A. Roy D. Wasson

Upon review of this Court, it will draw the inescapable conclusion that Mr. Wasson's conduct prior to and thereafter lapse of the AEDPA's one-year time limitation on October 6, 2004, made himself a direct party to the severe failure in the judicial system caused by State's conduct in continuing Federalized Anarchy in and thru federal cases No. 02-20398-Civ-Marra and 03-20902-Civ-UUB. Moreover, it will draw the inescapable conclusion that Mr. Wasson was required to resign prior to October 6, 2004, April 21, 2005, January 6, 2006, May 19, 2007, and prior to February 1, 2008.  This inescapable conclusion will be demonstrated down below.

1.    Motion to Remove Mr. Wasson Filed in the Florida Supreme Court:

On May 19, 2007, Mr. Wasson knowingly abandoned mutually agreed upon legal strategy that was collectively seeking to redress, in effect, the severe failure in the judicial system.  He abandoned this strategy because Petitioner failed to make him "happy."[2]  This was clearly adverse and hostile to Petitioner and more adverse to the judicial system and right to an effective appellate review.  Moreover, it ultimately allowed counsel for the State, Sandra S. Jaggard, to continue assisting the State's conduct in the Federalized Anarchy and Det. Robert Fernandez's crime (perjury) of oral consent.  See "F. Delay" on pages 41-43  of First Motion; App. Q,

---

[2]    This is the subject matter of pending Florida Bar Case No. 2009-70,374 (11B) and discussed further down below.

Pages 2-9. Thus, Mr. Wasson made himself a direct party to the exacerbation of the severe failure of the judicial system in and thru Florida Supreme Court Case No. SC06-1532 on and thereafter October 8, 2008.

To alert the Court of Mr. Wasson's beyond-negligent conduct and severe failure in the judicial system, Petitioner filed motion to remove him and its supplements. See App. A-C.

On February 1, 2008, and without ordering required Nelson inquiry, the Court denied request to remove Mr. Wasson. See App. D. This denial took place despite Court's awareness of the undermining of right to effective appellate review and Petitioner being time barred for federal habeas corpus review.

Under normal circumstances, this Court may have found it necessary to require Mr. Wasson to respond to the allegations set forth within App. A-C. But the following two reasons render such necessity moot. First, the hostility of Mr. Wasson is evident throughout his response filed in Florida Bar Case No. 2009-70,374 (11B). See App. F. Lastly, Mr. Wasson clearly desires to no longer represent Petitioner. See App. I and N. If the need should arise thereafter his reason for removal for Petitioner to seek equitable relief on the AEDPA's one-year time limitation, then Mr. Wasson should be ordered to respond.

2.   Florida Bar Case No. 2009-70,374 (11B):

After being twice denied access to the courts by the Clerk of the Florida Supreme Court, Petitioner filed Bar Complaint against Mr. Wasson. See App. E; see also App. 2 of the First Motion; App. 3-5 in re twice denied access to the courts. Mr. Wasson's response to Bar complaint expressed clear and convincing hostility towards Petitioner. See App. F. Moreover, he made false statements and failed to disclose facts in violation of Florida Bar Rules 4-8.1(a) and (b) so as to avoid prosecution by the Florida Bar on his beyond negligent conduct prior to and thereafter lapse of the AEDPA's one-year time limitation on October 6, 2004. See Petitioner's rebuttal at App. G. On March 9, 2009, the Florida Bar found probable cause. See App. H. Thus, Mr. Wasson's hostility and misconduct in his response evince that he can no longer effectively represent Petitioner and he deserves to be disbarred. See *In Re Snyder,* 105 S. Ct. 2874, 2881 N.6 (1985) in re federal court's enforcement of professional responsibility standards pursuant to their general supervisory authority over members of the bar.

3.    Mr. Wasson's Attempts to Withdraw:

On November 5, 2008, Mr. Wasson filed a request to withdraw. See App. I. Petitioner attempted to file a response. See App. J. On January 22, 2009, Florida Supreme Court struck Petitioner's response and denied Mr. Wasson's request. See App. K-L.

On March 9, 2009, Mr. Wasson filed a second request to withdraw. See App. M. On March 23, 2009. Petitioner filed a response. See App. N. On April 13, 2009, Petitioner filed a supplemental pleading that stressed the need for Mr. Wasson's withdrawal. See App. O. On April 17, 2009, Florida Supreme Court denied Mr. Wasson's second request. See App. P.

Therefore, it is clear that Mr. Wasson wishes as much to no longer represent Petitioner as Petitioner wishes for his removal.

In conclusion, irreconcilable differences evince that Mr. Wasson can no longer effectively represent Petitioner, Mr. Wasson was required to resign prior to October 6, 2004, April 21, 2005, January 6, 2006, May 19, 2007, and February 1, 2008, and Mr. Wasson twice sought to withdraw. This justifies an order by this Court removing Mr. Wasson.


### B. Sandra S. Jaggard

Prior to and thereafter appointment of Mr. Wasson, Ms Jaggard demonstrated highly questionable impartiality towards Petitioner and more towards the judicial system. See App. Q, in re "B. State Case No. F95-17381C" on pages 13-15. Instead of resigning prior to appointment of Mr. Wasson, Ms Jaggard continued her conflict of interest with her client, the State, through the acts and lack thereof of Mr. Wasson. This conflict of interest was/is her assisting the

State's conduct in the Federalized Anarchy and Det. Fernandez's crime (perjury) of oral consent. This conflict of interest made Ms Jaggard responsible for the ongoing severe failure in the judicial system. Moreover, it made her and the State direct causes and parties to Petitioner's inability to timely file another federal habeas corpus petition on his convictions and sentence of death under the AEDPA's one-year time limitation. Ms Jaggard's highly questionable impartiality will be demonstrated down below.

1.    Florida Bar Case No. 2009-70,689(11E):

Petitioner twice attempted to directly alert the Florida Supreme Court on Ms Jaggard's highly questionable impartiality but Petitioner was rebuffed by the Clerk. See App. 2 of First Motion; App. 3-5. So, Petitioner proceeded to file Bar Complaint against Ms Jaggard. See App. Q. This Bar Complaint clearly detailed Ms Jaggard's conflict of interest with the State in, so near, and through proceedings of Federal Case No. 03-20902-Civ-UUB. Petitioner could not have made it any clearer without exceeding the 25-page limitation set by the Florida Bar in which Petitioner would have attached supporting evidence.

On February 9, 2009, Ms Jaggard filed a response. See App. R. Her response was a clever, albeit desperate, attempt to avoid disclosure of her conflict of interest with the State and her highly questionable impartiality. See Petitioner's rebuttal at App. S. Moreover, her presentation of false and misleading facts

7

directly related to her conflict of interest were attempts to avoid prosecution of herself and others by the Florida Bar and retard the Florida Bar's duty under Florida Bar Rules 3-7(j).

On February 26, 2009, Ms Jaggard achieved her goals as the Florida Bar closed the case. See App. T. Petitioner sought clarification from Bar counsel on two issues but only received a response on one issue. See App. U-V.

Regardless, Ms Jaggard's conflict of interest with the State and resulting highly questionable impartiality continuing in and thru[3] the Florida Bar evince the existence of the cognizable danger of Ms Jaggard repeating identical misconduct by entering this Court with "unclean hands" and continuing conflict of interest. The prevention of this avoidable consequences falls under this Court's inherent and supervisory powers as best expressed by *United States v. Payner,* 100 S. Ct. 2439,2451-52 (1980) and *In Re Snyder,* 105 S. Ct. at 2881n.6.

2.    Amended Second Bar Complaint Against Ms Jaggard:

On April 6, 2009, Petitioner filed a second Bar Complaint against Ms Jaggard. See App,. X. With no response from the Florida Bar, Petitioner filed an amended complaint with a letter dated April 27, 2009.  See App. Y-Z.   This

---

[3]    On March 16, 2009, Ms Jaggard continued her conflict and questionable impartiality from the Florida Bar into the Florida Supreme Court. She advanced the position of "do what I say and not what I do" on duty of a licensed attorney in regards to disclosing information of crimes and fraud committed by a client. See App. W, paragraph (7). This led to Petitioner filing a second Bar Complaint against Ms Jaggard and discussed further down. On July 23, 2009, she repeated this conduct in the U.S. Supreme Court. See App. 6-7.

complaint and attachments clearly demonstrate Ms Jaggard continuing her conflict of interest with the State from the Florida Supreme Court into the Florida Bar. See App. 1 and 2, in re latest developments on this amended second complaint. Thus, it demonstrates the substantial likelihood exists that Ms Jaggard will repeat this conduct from the Florida Bar into this Court and any other court.

In conclusion, there is clear and convincing evidence of Ms Jaggard's severe, if not fatal, conflicts of interest with her client, the State, and of her highly questionable impartiality. Petitioner contends that any other reasonable and competent Assistant Attorney General would have treated information of Federalized Anarchy differently and, therefore, treated proceedings in, so near, and thereafter Federal Case No. 03-20902 differently. Thus, this justifies an order by this Court of either removing Ms Jaggard as counsel for the State or enjoining her from making an appearance on behalf of the State in proceedings of this Court and any other court involving Petitioner. This will prevent giving the State any more unwarranted aid and delaying warranted aid to a wrongly convicted American. See *State Ex Rel. Oldham v. Aulls,* 408 So. 2d 587, 589 (Fl;a. 5th DCA 1981) in re quote of *Pantori, Inc. v. Stephenson,* 384 So. 2d 1357, 13459 (Fla,. 5th DCA 1980).

## C. Evidentiary Hearing

Petitioner respectfully requests an evidentiary hearing in light of the absence and inadequate fact-finding records through no fault of the Petitioner and despite his ad nauseam attempts to develop fair and full records of such.

Otherwise, the allegations and other factual contentions as set forth within present motion and First Motion are sufficiently supported by the Appendix and records and, if so specifically identified so, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## D.  State Interest

The removal of Mr. Wasson as well as the removal or enjoining Ms Jaggard will promote important State interests in the regulation of attorneys.

The State is precluded by equitable estoppel of opposing present motion with the defense of State interests in the finality of Petitioner's convictions and the sentence of death.  The State obliterated this State interest by fraudulently demanding and receiving 20% in Federal Case No. 99-1638.  See  "v. Federal Forfeiture Action" on pages 32-35 of First Motion.  Besides, the purpose of present motion is to prevent any more delays on the discovery of truth – severe failure in the judicial system.

10

Wherefore, Petitioner respectfully prays for relief of an order removing Mr. Wasson as counsel for Petitioner and removing or enjoining Ms Jaggard as counsel for the State or from making an appearance on behalf of the State, respectively.

## OATH/VERIFICATION

Under penalties of perjury, I, Daniel Lugo, declare that I have read the foregoing Motion to Remove Petitioner's Counsel, Roy D. Wasson; Motion to Remove or Enjoin Appearance of Opposing Counsel for the State, Sandra S. Jaggard, and that the facts stated in it are true.

_____Sept. 28, 2009_____
Date

_____Daniel Lugo_____
Daniel Lugo, Petitioner

11

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the following motion has been furnished by U.S. Mail to: ~~Judge Patricia A. Seitz, Federal District Court Judge, 301 N. Miami Ave., Room 150, Miami, FL 33128-7788;~~ Sandra S. Jaggard, Assistant Attorney General, 444 Brickell Avenue, Suite 950, Miami, FL 33131-2407; and Roy D. Wasson, 28 West Flagler Street, Suite 600, Miami, FL 33130, Bill McCollum, Attorney General, The Capitol, PL-01, Tallahassee, FL 32399-0001, on this _28th_ day of September, 2009.

Daniel Lugo, M16321
U.C.I. P-6223
7819 N.W. 228th St.
Raiford, FL 32026

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-2192-CIV-SEITZ

DANIEL LUGO,
    Petitioner,

v.

THE DEPARTMENT OF CORRECTIONS,
    Respondent.
_____/

## APPENDIX TO MOTION TO REMOVE OR ENJOIN APPEARANCE OF, RESPECTIVELY, PETITIONER'S COUNSEL, ROY. D.WASSON AND COUNSEL FOR THE STATE,SANDRA S. JAGGARD

A.    Motion to Remove Roy D. Wasson as Counsel for Appellant. Florida Supreme Court Case No. SC06-1532.

B.    Supplemental to Motion to Remove Roy D. Wasson as Counsel for Appellant. Florida Supreme Court Case No. SCo6-1532.

C.    Second Supplement to Motion to Remove Roy D. Wasson as Counsel for Appellant. Florida Supreme Court Case No. SC06-1532.

D.    Order of February 1, 2008. Florida Supreme Court Case No. SC06-1532.

E.    Florida Bar Complaint Against Roy D. Wasson. Case No. 2009-0,374(11B).

F.    Mr. Wasson's Response to Bar Complaint

G.    Mr. Lugo's Rebuttal to Mr. Wasson's Response to Bar Complaint

H.    Florida Bar Letter dated March 9, 2009.

I.    Court Appointed Attorney's Motion to Withdraw as Counsel in Florida Supreme Court Case No. SC06-1532.

1

J.   Mr. Lugo's Motion for Belated Request for Leave of Extension of Time to File Response to Court Appointed Attorney's Motion to Withdraw as Counsel. Florida Supreme Court Case No. SC06-1532.

K.   Order of January 22, 2009. Florida Supreme Court Case No. SC06-1532.

L.   Second Order of January 22, 2009. . Florida Supreme Court Case No. SC06-1532.

M.   Court Appointed Attorney's Renewed Verified Motion to Withdraw as Counsel. Florida Supreme Court Case No. SC06-1532.

N.   Mr. Lugo's Response to Court Appointed Attorney's Renewed Verified Motion to Withdraw as Counsel. Florida Supreme Court Case No. SC06-1532.

O.   Mr. Lugo's Supplemental Response to Court Appointed Attorney's Renewed Verified Motion to Withdraw as Counsel. Florida Supreme Court Case No. SC06-1532.

P.   Order of April 17, 2009. Florida Supreme Court Case No. SC06-1532.

Q.   Florida Bar Complaint Against Ms Jaggard. Case No. 2009-70,689(11E).

R.   Ms Jaggard's Response to Bar Complaint.

S.   Mr. Lugo's Rebuttal to Ms Jaggard's Response to Bar Complaint.

T.   Florida Bar Letter dated February 26, 2009.

U.   Mr. Lugo's Letter to the Florida Bar dated March 3, 2009.

V.   Florida Bar Letter dated March 11, 2009.

W.   Ms Jaggard's Response to Counsel's Renewed Motion to Withdraw. Florida Supreme Court Case No. SC06-1532.

X.   Second Florida Bar Complaint Against Ms Jaggard.

Y.   Mr. Lugo's Letter to the Florida Bar dated April 27, 2009.

2

Z.   Amended Second Florida Bar Complaint Against Ms Jaggard.

1.   Florida Bar Letter dated May 26, 2009.

2.   Mr. Lugo's Letter to the Florida Bar dated May 27, 2009.

3.   Florida Supreme Court Letter dated August 1, 2008.

4.   Mr. Lugo's Letter to the Clerk of the Florida Supreme Court dated August 1, 2008.

5.   Florida Supreme Court Letter dated September 5, 2008.

6.   Ms Jaggard's Brief in Opposition.  Filed on July 23, 2009 in U.S. Supreme Court Case No. 08-11045.

7.   Mr. Lugo's Reply to Brief in Opposition on August 3, 2009, in U.S. Supreme Court Case No. 08-11045.  Note: Mr. Lugo's Certiorari is App. I of First Motion.

Appendix I
to
Federal Habeas Corpus Petition

# WASSON & ASSOCIATES

**CHARTERED**

**APPELLATE ATTORNEYS**

Suite 205

5901 Southwest 74th Street

Miami, FL 33143

Telephone (305) 666-5053

Facsimile (305) 666-0010

Roy D. Wasson
Board Certified in Appellate Practice
roy@wassonandassociates.com

*App. I*

Annabel C. Majewski
Appeals and Litigation Support
annabel@wassonandassociates.com

May 19, 2007

Daniel Lugo
Inmate No. M16321
Union Correctional Institution
7819 NW 228th Street
Raiford, FL 32026-4000

Re:  *Lugo v. State of Florida*
Our File No. 01193

Dear Danny:

Enclosed is your copy of the initial brief in this appeal. There were no meritorious issues to raise by petition for habeas corpus. I never received the information you assured me for years would be forthcoming from Terry. I suppose that must mean either that there was nothing there to begin with or that you have no real control over things with her.

Please think twice before being critical about this brief. You and I have much different styles of writing, and I have the experience you lack concerning how to present issues to an appellate court. I know it sounds crass to say that you need to keep me happy more than I need you, but the simple fact of life is that I do not need the aggravation of working for years for a tiny percentage of my usual and customary fee on a mega case, and then have an ungrateful (and unresponsive) client give me grief about things.

I will provide you with a copy of the State's brief when I receive it. I assume that oral argument will be set for sometime next Fall. Note my new address, above.

Sincerely,

Roy D. Wasson

encl.

Appendix V
to
Federal Habeas Corpus Petition

# WASSON & ASSOCIATES

CHARTERED
APPELLATE ATTORNEYS
Suite 205
5901 Southwest 74th Street
Miami, FL 33143
Telephone (305) 666-5053
Facsimile (305) 666-0010

**Roy D. Wasson**
Board Certified in Appellate Practice
roy@wassonandassociates.com

**Annabel C. Majewski**
Appeals and Litigation Support
annabel@wassonandassociates.com

July 6, 2007

Hon. Tom D. Hall
Clerk of the Court
Florida Supreme Court
500 South Duval Street
Tallahassee, FL 32399-1927

Re:   *State Florida v. Lugo*
      Case No.: SC06-1532
      Our File No.: 01193

Dear Mr. Hall:

I am court-appointed Registry counsel representing the Defendant/Appellant in this capital, post-conviction proceeding. I recently filed Appellant's Initial Brief from the trial court's denial of relief under Fla. R. Crim. P. 3.851. The purpose of this letter is to advise the Court of the reasons why I have not filed a petition for writ of habeas corpus in this matter.

I personally reviewed the extensive record leading to the Court's affirmance of the convictions and death sentences on direct appeal in *Lugo v. State*, 845 So. 2d 74 (Fla. 2003). I also engaged the services of several very capable second-year law students who collectively re-reviewed the entire record for potential issues cognizable in a habeas corpus proceeding which were not already the subject of the 3.851 proceedings and related appeal to this Court. Notwithstanding our exhaustive review of every page in the record, we were unable to identify any arguable instances of ineffective assistance of appellate counsel or other potential issues for a habeas petition. Therefore, unless otherwise directed by the Court, I will not be filing a petition for habeas corpus herein.

Appendix - 5

Respectfully yours,

Roy D. Wasson

RDW/dpj

2

WASSON & ASSOCIATES, CHARTERED
Suite 205 • 5901 Southwest 74th Street • Miami, FL 33143 • Telephone (305) 666-5053
roy@wassonandassociates.com

Appendix K
to
Federal Habeas Corpus Petition



*App K*

# THE FLORIDA BAR

RIVERGATE PLAZA, SUITE M-100
444 BRICKELL AVENUE
MIAMI, FL 33131-2404

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

305/377-4445
WWW.FLABAR.ORG

November 17, 2009

Charles Kenneth Johnson, Esq., Chair
State Attorney's Office
1350 NW 12th Street
Miami, Florida 33136

RE:   *Complaint by Daniel Lugo against Roy D. Wasson*
      *The Florida Bar File No. 2009-70,374(11P)*

Dear Mr. Johnson:

A copy of the above referenced file pertaining to the complaint of Daniel Lugo against Roy D. Wasson is being re-assigned and forwarded to **William J. Brown, Esq.**, as Investigating Member, for review and appropriate consideration by the Grievance Committee consistent with The Rules Regulating The Florida Bar.

There may be a possible violation of the following Rule Regulating The Florida Bar or any other rules deemed applicable by the committee.

**Rule 4-1.8 of the Rules of Professional Conduct.**

**\* With regard to Rule 4-1.8, your attention is directed to Respondent's letters to the Complainant dated March 21, 2006 and April 29, 2006, which are attached as Exhibits to Complainant's letter of December 4, 2008 to The Florida Bar.**

Thank you for your attention to this matter.

Very truly yours,

WILLIAM MULLIGAN
Bar Counsel

WM\en
Enclosures

cc:   Roy D. Wasson, Esq.
      Daniel Lugo
      William J. Brown, Esq., Investigating Member (w/ a copy of the file)

P.S. to Respondent:  You may be hearing from the Chair or a committee member in due course relative to the foregoing.